John T. Jasnoch (CA 281605)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone:  (619) 233-4565
Facsimile:   (619) 233-0508
Email:  jjasnoch@scott-scott.com

*Attorneys for Lead Plaintiffs*

[Additional counsel on signature page.]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| ARINDAM BANERJEE, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AVINGER, INC., et al.,<br><br>Defendants. | Case No. 17-cv-3400-CW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CLASS CERTIFICATION, ISSUANCE OF NOTICE AND SETTING OF DATE FOR FINAL SETTLEMENT HEARING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 22, 2018<br>Time: 2:00 p.m.<br>Dept: TBD<br>Honorable Claudia Wilken |

# **TABLE OF CONTENTS**

NOTICE OF MOTION ...................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 2

PRELIMINARY STATEMENT ........................................................................................ 2

FACTUAL BACKGROUND ............................................................................................ 4

      A.     Nature of the Action ............................................................................... 4

      B.     Procedural History................................................................................. 5

      C.     The Negotiation of the Settlement ........................................................ 6

SUMMARY OF THE TERMS OF THE SETTLEMENT ................................................ 8

ARGUMENT ..................................................................................................................... 9

I.       THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........... 9

      A.     The Standards for Preliminary Approval ............................................. 9

      B.     Preliminary Approval Should Be Granted ......................................... 10

            1.     The Settlement Merits an Initial Presumption of Fairness Because It Is the Result of Arm's-Length Negotiations by Informed and Experienced Counsel ........................................................................... 10

            2.     The Proposed Settlement Is Fair, Reasonable and Adequate .................. 12

            3.     The Plan of Allocation Should Be Preliminarily Approved .................... 17

      C.     The Proposed Forms and Method of Providing Notice to the Class Are Appropriate and Satisfy Fed. R. Civ. P. 23, the PSLRA, and Due Process ........ 18

      D.     Appointment of KCC as Claims Administrator ................................... 20

II.      THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS ........................... 20

      A.     Numerosity .......................................................................................... 21

      B.     Commonality........................................................................................ 21

      C.     Typicality............................................................................................. 22

      D.     Adequacy............................................................................................. 22

      E.     Predominance and Superiority ............................................................ 23

i

PLTFS' NOT. OF MOT. & UNOP. MOT. FOR PRELIM. APP. OF CLASS ACTION SET., CLASS CERT.,
ISSUANCE OF NOT. & SETTING OF DATE & MEMO OF P&AS
CASE NO. 17-CV-3400-CW

III.    THE PROPOSED SCHEDULE FOR THE SETTLEMENT FAIRNESS
        HEARING, THE SUBMISSION OF REQUESTS TO OPT-OUT, AND OTHER
        DEADLINES SHOULD BE APPROVED .......................................................................24

1

2 <u>**TABLE OF AUTHORITIES**</u>

3 **Page(s)**

**Cases**

4 *Acosta v. Trans Union, LLC*,
    243 F.R.D. 377 (C.D. Cal. 2007) ...............................................................10

5

6 *Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................................24

7 *Amgen v. Connecticut Ret. Plans & Trust Funds*,
8     133 S. Ct. 1184 (2013) ..............................................................................24

9 *Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ..................................................................................24
10

11 *Binder v. Gillespie*,
    184 F.3d 1059 (9th Cir. 1999)....................................................................24

12

13 *Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975).....................................................................20

14 *Cammer v. Bloom*,
15     711 F. Supp. 1264 (D.N.J. 1989) ...............................................................24

16 *Churchill Village, L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004)......................................................................19

17 *Curry v. Hanson Medical, Inc.*,
18     No. 4:09-cv-05094-CW, 2013 WL 12174649 (N.D. Cal. Dec. 5, 2013)..................18

19 *Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir. 1995), *rev'd on other grounds*,
    *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367 (1996)...........................20
20

21 *Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc.*,
    439 F.3d 165 (2d Cir. 2006).......................................................................20

22 *Frank v. Eastman Kodak Co.*,
23     228 F.R.D. 174 (W.D.N.Y. 2005) ...............................................................15

24 *Gable v. Land Rover N. Am., Inc.*, No. SACV 07-0376 AG RNBX, 2011 WL
    3563097 (C.D. Cal. July 25, 2011) .............................................................21
25

26 *Gerardo v. Quong Hop & Co.*,
    No. C 08-3953 JF (PVT), 2009 WL 1974483 (N.D. Cal. Jul. 7, 2009) ...................11

27

28 iii

*Gribble v. Cool Transports Inc.*,
  No. CV 06-04863 GAF, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008)....................................11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)...............................................................................20, 21, 22

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)...........................................................................18

*In re AOL Time Warner Sec. & ERISA Litig.*,
  No. MDL 1500, 2006 WL 461513 (S.D.N.Y. Apr. 6, 2006) ...............................................14, 15

*In re Excess Value Ins. Coverage Litig.*,
  No. M-21-84RMB, MDL-1339, 2004 WL 1724980 (S.D.N.Y. July 30, 2004) ........................10

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
  MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992)...................................................11

*In re Infineon Techs. AG Sec. Litig.*,
  266 F.R.D. 386 (N.D. Cal. 2009) ..................................................................................21

*In re M.L. Stern Overtime Litig.*,
  No. 07-CV-0018, 2009 WL 995864 (S.D. Cal. Apr. 13, 2009) .................................................9

*In re Michael Milken & Assoc. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993)....................................................................................12

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007)..........................10, 11, 20

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*,
  No CV 09-5416-DOC, 2011 WL 280991 (C.D. Cal. Jan 26, 2011).............................12, 18, 19

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008).......................................................................................9

*In re THQ, Inc., Sec. Litig.*,
  No. CV 00-1783, 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ...........................................20

*In re Viropharma Inc. Sec. Litig.*,
  No. CV 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)................................................12

*Jaffe v. Morgan Stanley & Co. Inc.*,
  No. C-06-3903-TEH, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) .....................................20, 21

*Louie v. Kaiser Health Plan, Inc.*,
  No. 08CV0795, 2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ................................................11

*Nat'l Rural Telecomms. Coop. v. DIRECTV,* Inc.,
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................11

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982)..........................................................................9

*Phila. Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.,*
    323 F. Supp. 364 (E.D. Pa. 1970) ................................................................10

*Roberts v. TJX Companies, Inc.,*
    No. 13-CV-13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ...........12

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003)..................................................................16, 22

*Stratton v. Glacier Ins. Adm'rs,* Inc., No. 1:02-CV-06213,
    2007 WL 274423 (E.D. Cal. Jan. 29, 2007)...............................................19

*Thieriot v. Celtic Ins. Co.,*
    No. C 10-04462-LB, 2011 WL 109636 (N.D. Cal. Jan. 13, 2011)........9, 10

*Todd v. STAAR Surgical Co,*
    No. CV-14-05263, 2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ...................... *passim*

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993)............................................................................9

*Util. Reform Project v. Bonneville Power Admin.,*
    869 F.2d 437 (9th Cir. 1989)..........................................................................9

*Warner Commc'ns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985).................................................................15

*Williams v. Vukovich,*
    720 F.2d 909 (6th Cir. 1983).........................................................................10

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010)........................................................................21

*Yamner v. Boich,*
    No. C-92-20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994).......20

**Statutes, Rules, and Regulations**

15 U.S.C.
    §78u 4(a)(7)................................................................................................18, 19

Federal Rules of Civil Procedure
    Rule 23 ....................................................................................4, 18. 19, 20
    Rule 23(a) ....................................................................................21, 24
    Rule 23(a)(1) ....................................................................................21
    Rule 23(a)(4) ....................................................................................22, 23
    Rule 23 (b)(3) ....................................................................................21, 23, 24
    Rule 23(c)(2) ....................................................................................18
    Rule 23(e) ....................................................................................9, 18

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (4th ed. 2005)..................................................................9

4 H. Newberg & A. Conte,
    NEWBERG ON CLASS ACTIONS §11:25 (4th ed. 2002) ..................................................9

5 WM. Moore, MOORE'S FEDERAL PRACTICE (3d ed. 2001) ........................................10

7A Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE §1768 (3d ed. 2005)......................3

S. Starykh & S. Boettrich, *Recent Trends in Securities Class Action Litigation:*
    *2017 Full Year Review 30* (NERA ECONOMICS Jan. 29, 2018), available at
    www.nera.com ....................................................................................3, 16

PLTFS' NOT. OF MOT. & UNOP. MOT. FOR PRELIM. APP. OF CLASS ACTION SET., CLASS CERT.,
ISSUANCE OF NOT. & SETTING OF DATE & MEMO OF P&AS
CASE NO. 17-CV-3400-CW

**NOTICE OF MOTION**

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that, on May 22, 2018 at 2:00 p.m., or as soon as it may be heard in the Courtroom of the Honorable Claudia Wilken, United States District Judge at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California 94612, Lead Plaintiffs Arindam Banerjee and Jogesh Harjai ("Lead Plaintiffs"), on behalf of themselves and the Class, by and through Lead Counsel, do and will respectfully move this Court for an Order, pursuant to Federal Rule of Civil Procedure ("Rule") 23:  (i) granting preliminary approval of a global settlement in the amount of $5 million to resolve this action and the state court action ("Settlement"); (ii) approving the form and substance of the proposed Long-form Notice of Proposed Settlement of Class Action ("Notice"), the Summary Notice ("Summary Notice"), the Proof of Claim and Release form ("Proof of Claim"), and the methods of disseminating notice to the Class[1]; (iii) setting deadlines for Class Members to exercise their rights in connection with the proposed Settlement; and (iv) scheduling a hearing date for final approval of the Settlement and Plan of Allocation and application(s) for attorneys' fees and expenses ("Settlement Hearing").

This unopposed motion is supported by the below memorandum of points and authorities, the Stipulation of Settlement dated May 9, 2018 ("Stipulation") and exhibits thereto, filed herewith as Exhibit 1.  Lead Plaintiff also submits a [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), with annexed exhibits, which were negotiated by the Settling Parties.

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the Court should grant preliminary approval of the proposed $5 million Settlement on the terms and conditions set forth in the Stipulation;

---

[1]    Capitalized terms shall have the same meaning as set forth in the Stipulation.

2.    Whether the Court should approve the form and substance of the proposed Notice, Summary Notice, and Proof of Claim appended as Exhibits A1-A3 to the Preliminary Approval Order, as well as the manner and timing of notifying the Class of the Settlement; and

3.    Whether the Court should schedule a Settlement Hearing to determine whether the Settlement and Plan of Allocation should be finally approved, and whether applications for attorneys' fees and expenses should be approved.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Plaintiffs Arindam Banerjee, Jogesh Harjai, Lindsay Grotewiel, and Todd Vogel ("Named Plaintiffs") submit this brief in support of their Motion for Preliminary Approval of the proposed $5,000,000 settlement of this class action (the "Action"), pursuant to the Stipulation attached hereto as Exhibit 1.  The Settlement was reached only after arm's-length negotiations conducted under the auspices of an experienced mediator, and if approved, would settle all claims at issue in both this Action and a related action, *Gonzalez v. Avinger, Inc.,* No. 17-CIV-02284 (Calif. Super. Ct. San Mateo Cty), that is pending in California state court state (the "State Action").

More specifically, as part of their Motion, Plaintiffs ask this Court to enter the parties' accompanying [Proposed] Order for Preliminary Approval of Proposed Class Action Settlement ("Preliminary Approval Order"), which is being separately filed herewith (and which is also included as Exhibit A to the Stipulation).   Attached to the proposed Preliminary Approval Order as Exhibits A-1, A-2 and A-3 thereto are: (1) the proposed Notice of Settlement (the "Notice"), to be mailed to all Class members who can be identified and located with reasonable effort; (2) the proposed Summary Notice ("Summary Notice"), which would be published in the print edition of *Investor's Business Daily* and on the internet via the *PR Newswire*; and (3) the proposed Proof of Claim and Release form ("Proof of Claim"), which would also be mailed with the Notice to all Class members.  Plaintiffs seek the Court's approval of the proposed notice plan as set forth in the Preliminary Approval Order, and the appointment of KCC Class Action Services LLP ("KCC") as Claims Administrator to disseminate the Notices and administer the claims process.  The

2

PLTFS' NOT. OF MOT. & UNOP. MOT. FOR PRELIM. APP. OF CLASS ACTION SET., CLASS CERT.,
ISSUANCE OF NOT. & SETTING OF DATE & MEMO OF P&AS
CASE NO. 17-CV-3400-CW

Motion also asks the Court to set a date for a final approval hearing (the "Settlement Fairness Hearing") on whether it should grant *final* approval of the Settlement and Plan of Allocation, and to consider Plaintiffs' Counsel's Fee and Expense Application and any objections or "opt-out" requests from Class members.  The Preliminary Approval Order would also set customary deadlines for the submission of "opt-out" requests, objections and other submissions relating to final approval of the Settlement and Plaintiffs' Counsel's Fee and Expense Application.

The Settlement represents an excellent result for the Class that easily meets the standard for preliminary approval.  The $5 million recovery is just below the median $6 million settlement value for all settled securities class actions in 2017,[2] and is particularly noteworthy when one considers not only the significant risks of litigation, but also the precarious financial condition of defendant Avinger, Inc. ("Avinger" or the "Company").  Indeed, the proposed recovery almost equals Avinger's market capitalization of roughly $6 million, based on its current trading price of roughly $1.25 per share as of May 9, 2018.  In sum, there are very real risks here that a much smaller recovery (or none at all) would result if the case were to be litigated through fact and expert discovery, dispositive motions, trial, and likely appeals.  Moreover, the case was settled by experienced counsel who had conducted an extensive factual investigation, and the Settlement was reached only after arm's-length negotiations conducted under the auspices of a respected mediator of securities class actions, Robert M. Meyer, Esq. of JAMS.  These additional factors provide further strong support for granting preliminary approval.

Finally, the Motion also seeks to certify the proposed Class,[3] to appoint the Named Plaintiffs in this Action (Dr. Banerjee, Dr. Harjai, Ms. Grotewiel and Mr. Vogel) as Class Representatives, and to appoint Scott+Scott Attorneys at Law LLP as Class Counsel.  For the

---

[2]    *See* S. Starykh & S. Boettrich, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2017 FULL YEAR REVIEW 30 (NERA Economics, Jan. 29, 2018), available at www.nera.com.

[3]    The proposed Class consists of all Persons, other than Defendants and certain of their affiliated Persons, who purchased or otherwise acquired shares of Avinger common stock between January 29, 2015 and April 10, 2017, inclusive (the "Class Period").

reasons set forth below, the proposed Class meets all relevant requirements under Fed. R. Civ. 23, and accordingly the class certification aspects of the Motion should also be granted.

**FACTUAL BACKGROUND**

### A.   Nature of the Action

Avinger is a commercial-stage medical device company that designs, manufactures and sells image-guided, catheter-based atherectomy systems that are used by doctors to treat patients with peripheral artery disease by removing plaque from the arteries. The Pantheris system is Avinger's flagship product. Plaintiffs allege that Defendants violated §11 of the Securities Act of 1933 ("Securities Act") and §10(b) of the Securities Exchange Act ("Exchange Act") by making materially false and misleading statements in the Offering Documents for Avinger's January 29, 2015 Initial Public Offering (the "IPO") and thereafter during the Class Period that, *inter alia*, improperly touted Avinger's business, products, and prospects, while omitting to disclose (1) that Avinger's Pantheris product had substantial reliability issues; (2) that these issues would likely have a negative impact on Pantheris sales and jeopardize Avinger's ability to sell the product after its commercial launch (which took place in 2016); and (3) that, as a result of the foregoing, the Defendants' statements regarding Avinger's business, operations and prospects were materially false, misleading and/or incomplete, and/or lacked reasonable basis. *See* Amended Consolidated Class Action Complaint, ECF No. 109 ("Am. Compl."), ¶¶1-5.

Defendants sold approximately 5 million Avinger shares to the public in the January 2015 IPO at $13 per share. However – roughly 18 months after the Offering and four months after the commercial launch of Pantheris – Avinger's share price fell 39.7% (or $4.53) on July 13, 2016 after it reported "lower than expected" Pantheris utilization in the second quarter of 2016, and announced that it was working to implement changes to the Pantheris in response to customer complaints by improving the product's fiber optic imaging cables and overall robustness. The Amended Complaint further alleges that Avinger shares suffered additional, though much smaller, price declines over the following months in response to further partial corrective disclosures in

early August 2016 and on January 6, March 6 and April 10, 2017 of more disappointing Pantheris sales and of the need to further improve the product.  Am. Compl., ¶¶4, 60-76.

Defendants have denied, and continue to deny, that they made any materially false or misleading statements, or that any such statements caused any Class member to suffer damages.

**B.    Procedural History**

The first securities class action against Defendants (and this Action's direct predecessor) was filed on May 22, 2017 in the State Court under the caption *Grotewiel v. Avinger, Inc.,* 17-CIV-02240 (Cal. Super. San Mateo Cty).  Defendants thereafter removed that action (together with two similar actions, *Gonzalez  v. Avinger, Inc.,* 17-CIV-2284 and *Olberding  v. Avinger, Inc.,* 17-CIV-2307, that had also originally been filed in the State Court) to this Court.  *See* ECF No.1. On July 21, 2017, this Court granted the motions of the *Gonzalez* and *Olberding* plaintiffs to remand those actions back to state court.  *See* ECF No. 37 in related federal case No. 4:17-cv-03398-CW.

Plaintiff Grotewiel and her husband plaintiff Vogel, however, decided to remain in this Court. After issuance of notice pursuant to the PSLRA's lead plaintiff provisions, on September 5, 2017, Plaintiffs Banerjee and Harjai moved to be appointed "lead plaintiffs" in the *Grotewiel* case.  ECF No. 41.  The Court granted that motion on October 11, 2017, and also appointed their counsel (Scott+Scott) as Lead Counsel.  ECF No. 83.  This Action then proceeded in this Court under a new caption, *Banerjee v. Avinger, Inc.,* No. 17-cv-03400-CW.  Meanwhile, the plaintiff in *Olberding* withdrew, and in September 2017, the remaining state plaintiff, Billy Gonzalez ("State Plaintiff"), filed an amended complaint for violations of §11 of the Securities Act against all Defendants in the *Gonzalez* case (hereafter, the "State Action").

On October 17, 2017, at the Initial Case Management Conference and in a pre-trial Order issued that same day, this Court, *inter alia*, (a) directed the parties in this Action to explore alternative dispute resolution through either the Court's ADR Program or through private mediation; (b) set an ADR conference date; and (c) directed Lead Counsel "to contact [plaintiff]

1    Grotewiel['s] attorneys [Bottini & Bottini] to discuss prosecution of this case" and to "[explore]

2    coordination of the state and federal court actions."  ECF No. 88, at 1.

3        Consistent with the Court's October 17, 2017 Order, on November 21, 2017 Lead

4    Plaintiffs and their counsel (together with Ms. Grotewiel and Mr. Vogel as additional plaintiffs,

5    and Grotewiel's, Vogel's and State Plaintiff's counsel as additional counsel), filed the

6    Consolidated Class Action Complaint for Violations of the Securities Laws (the "Consolidated

7    Complaint") (ECF No. 92), alleging that the Offering Documents for the IPO contained material

8    misstatements or omissions concerning Avinger and its Pantheris product, and further alleging, on

9    behalf of those who purchased Avinger common stock pursuant or traceable to the IPO, that, as a

10   result, all Defendants had violated §11 of the Securities Act.  As set forth therein, the

11   Consolidated Complaint was based on Plaintiffs' Counsel's extensive review of Avinger's

12   regulatory filings, transcripts of Company conference calls, and analyst reports concerning

13   Avinger and the industry it operated in, as well as on information that Plaintiffs' Lead Counsel

14   obtained from former Avinger employees.  ECF No. 92 at 1, ¶¶ 32-46.

15       **C.    The Negotiation of the Settlement**

16       Meanwhile, after a series of phone conferences with the Court's ADR Program – and

17   consistent with the Court's October 17, 2017 Order – the parties in both this Action and the State

18   Action agreed to pursue a private mediation under the auspices of a highly respected mediator,

19   Robert Meyer of JAMS (the "Mediator"), and to participate in a face-to-face mediation at his

20   offices on February 8, 2018.  *See* ECF No. 97.

21       Prior to that mediation session, counsel for both sides prepared and exchanged

22   comprehensive opening mediation briefs and accompanying exhibits on January 22, 2018, and

23   conducted preliminary joint and separate phone conferences with the Mediator.  After exchanging

24   opening mediation papers, Defendants filed papers in support of their Motions to Dismiss on

25   January 26, 2018.  *See* ECF Nos. 101, 103.  Shortly thereafter, on February 2, 2018, Plaintiffs

26   submitted their reply mediation papers, which responded to the legal and factual arguments that

27   Defendants had raised in both their opening mediation brief and in their Motions to Dismiss.

28

Following this extensive briefing, counsel participated in a full-day mediation at JAMS' offices in Century City, CA, during which each side presented arguments to the Mediator. Throughout the mediation, the Mediator, in turn, pressed the parties to realistically address the strengths and weaknesses of both Plaintiffs' claims and Defendants' defenses. At the end of this full day of mediation and related negotiations, the parties failed to reach an agreement. However, before the parties' counsel left the mediation, the Mediator made a "mediator's proposal," whereby he proposed that all securities claims that were or could have been asserted in the Actions be settled (subject to judicial approval) for $5 million in cash.

Attempts to reach agreement based on the Mediator's proposal proved difficult, with the result that further negotiations continued over roughly the next six weeks, during which each side participated in additional discussions with the Mediator and each other, with various proposals and responses sometimes being transmitted to the other side through the Mediator, and sometimes directly by telephone (with notice thereafter provided to the Mediator). On March 19, 2018, Plaintiffs filed the Amended Consolidated Complaint (ECF No. 109) which re-asserted the Securities Act claims referenced above, and added claims under the Exchange Act against Avinger and the Officer Defendants.

The parties thereafter signed a binding memorandum of understanding to settle both this Action and the State Action on terms consistent with the Mediator's original proposal, and so informed the Court on March 23, 2018. ECF No. 111. In April and early May 2018, the parties negotiated the remaining terms of the customary "long form" Stipulation of Settlement and accompanying forms of Preliminary Approval Order, individual Notice, Summary Notice, Proof of Claim, and Final Judgment. The parties executed the Stipulation (with exhibits) on May 9, 2018. *See* Stipulation of Settlement, attached to the Fredericks Decl. (hereafter, "Stip.").

## SUMMARY OF THE TERMS OF THE SETTLEMENT[4]

A copy of the Stipulation, together with its exhibits, is attached to the accompanying Fredericks Declaration.  In sum, the main terms of the Settlement are as follows:

**Monetary Consideration**:  In consideration for the Class Members' release of claims described below, Avinger will pay $5 million into an escrow account established by Lead Counsel at the Escrow Agent (Huntington National Bank).  Full payment must be made within 30 calendar days of this Court's entry of the Preliminary Approval Order.  Stip., ¶2.

**Distribution to Class Members**:  The resulting settlement fund, less costs of notice and administration, taxes on income earned by the fund, any Court-awarded attorneys' fees and expenses (including any awards to the representative plaintiffs for time and expenses incurred in connection with their service to the Class) (the "Net Settlement Fund") will be distributed to Authorized Claimants (*i.e.,* Class Members who file timely and valid Proof of Claims) in accord with the Plan of Allocation (or such other plan of allocation as the Court may approve).  Stip., ¶¶27-37.  The proposed Settlement is non-reversionary, as once it is approved and becomes final, no Defendant is entitled to get back any of the $5 million settlement consideration.  *Id.*, ¶2.

**Release of Claims**:  In exchange for the $5 million, Plaintiffs and the Class Members will release all of the "Released Claims" against the Defendants and their related parties (the "Released Defendants' Parties").  Stip., ¶¶23-24.  As is customary, "Released Claims" is defined to include all claims (including "Unknown Claims") that were or could have been asserted in the Actions by Plaintiffs or the Class against any of the Released Defendants' Parties, *provided* that such claims both "(a) arise out of, are based on, or relate in any way to any of the allegations, acts, transactions, facts, events, matters, occurrences, statements, representations or omissions" alleged in the Action, and "(b) arise out of, are based on, or relate to the purchase or acquisition of any shares of Avinger common stock during the Class Period."  *See* Stip., ¶¶1.31, 1.43.

---

[4]    Capitalized terms not defined herein have the meanings given them in the Stipulation.  In addition, all internal citations are omitted, and all emphasis is added, to quoted case citations.

1    After weighing the Settlement's benefits to the Class against the opportunities, risks, costs

2    and uncertainties of further litigation, Plaintiffs' Counsel strongly believe that the proposed

3    Settlement is fair, reasonable, and adequate to the Class, and in the Class's best interest.

4    <u>**ARGUMENT**</u>

5    **I.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

6    As a matter of public policy, settlement is strongly favored to resolve litigation, especially

7    complex class actions.  *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing

8    "strong judicial policy" that "favors settlements, particularly where complex class action litigation

9    is concerned"); *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir.

10   1989) (same); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)

11   ("voluntary conciliation and settlement are the preferred means of dispute resolution").

12   **A.    The Standards for Preliminary Approval**

13   Fed. R. Civ. P. 23(e) requires judicial approval of class action settlements.  Such approval

14   involves a two-step process where the court first determines if a proposed settlement deserves

15   preliminary approval, and then decides, *after* notice is given to class members, if *final* approval is

16   warranted.  MANUAL FOR COMPLEX LITIGATION ("MCL") §13.14, at 173 (4th ed. 2005); *Torrisi v.*

17   *Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993); *Thieriot v. Celtic Ins. Co.*, No. C 10-

18   04462-LB, 2011 WL 109636, at *3 (N.D. Cal. Jan. 13, 2011); *In re M.L. Stern Overtime Litig.*,

19   No. 07-CV-0018, 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009).  Plaintiffs now ask the Court

20   to take the first step in the approval process by granting *preliminary* approval.

21   In deciding whether to grant preliminary approval, the key issue is whether the proposed

22   Settlement is within the range of what might be found fair, reasonable and adequate, such that the

23   Court should give Notice of the proposed Settlement to Class Members, and schedule a hearing to

24   consider final approval.  *See* MCL §21.632, at 321 (4th ed. 2004); 4 H. Newberg & A. Conte,

25   NEWBERG ON CLASS ACTIONS §11:25 (4th ed. 2002); *Officers for Justice*, 688 F.2d at 625;

26   *Torrisi*, 8 F.3d at 1375; *Thieriot*, 2011 WL 109636, at *4.

27

28

Preliminary approval does not require the Court to make a final decision on the proposed Settlement's fairness, reasonableness and adequacy. Rather, that decision is made only at final approval, after Notice has been given and Class Members have had an opportunity to object to or "opt out" from the Settlement. *See* 5 WM. Moore, MOORE'S FEDERAL PRACTICE §23.83[1], at 23-336.2 through 23-339 (3d ed. 2001). Moreover, in considering a potential settlement, "the court need not address whether the settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class." *Thieriot*, 2011 WL 109636, at *3; *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (to warrant preliminary approval, "the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after [class members have] had a chance to object and/or opt out"); *Phila. Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970) (preliminary approval is simply the prerequisite to giving Notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection").

**B.    Preliminary Approval Should Be Granted**

    **1.    The Settlement Merits an Initial Presumption of Fairness Because It Is the Result of Arm's-Length Negotiations by Informed and Experienced Counsel**

As a threshold matter, there is an initial presumption that a proposed settlement is fair and reasonable where, as here, it is the result of arm's length negotiations by experienced counsel. *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *5 (N.D. Cal. June 30, 2007); *see also Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84RMB, MDL-1339, 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in

10

PLTFS' NOT. OF MOT. & UNOP. MOT. FOR PRELIM. APP. OF CLASS ACTION SET., CLASS CERT., ISSUANCE OF NOT. & SETTING OF DATE & MEMO OF P&AS
CASE NO. 17-CV-3400-CW

complex class litigation, the Settlement will enjoy a presumption of fairness'") (citation omitted). [5]

Here, both sides were represented by experienced and capable counsel, and Lead Counsel respectfully submit that they have a national reputation in the field of securities and other complex class actions. *See* ECF No. 42 (attaching Scott+Scott firm résumé); *see also* ECF No. 83, at 7 (referencing this Court's prior approval of Scott+Scott as lead counsel in this Action "based on the information submitted regarding the firm's experience and expertise in the area of securities litigation"). Moreover, although the case had not yet entered formal discovery when the proposed Settlement was reached, as reflected by their detailed Amended Complaint, Lead Counsel had conducted a substantial pre-filing investigation, which included (*inter alia*) reviewing extensive documentary materials (including Avinger's public regulatory filings, conference call transcripts and analyst reports about Avinger and the industry within which it operates), as well as locating and interviewing multiple former Avinger employees. Moreover, all parties had plainly become familiar with the legal aspects of their respective positions through their briefing of relevant issues earlier this year. Accordingly, Lead Plaintiffs and their counsel had more than a sufficient understanding of the strengths and weaknesses of the claims before entering into the Settlement. *Portal Software*, 2007 WL 1991529, at *6 (preliminary approval warranted where experienced counsel who understood each side's claims and defenses negotiated settlement). Nor can there be any serious dispute that the settlement negotiations were hard-fought and conducted at arms'-length. Indeed, the Settlement was reached only after an initial,

---

[5]    *See also Gerardo v. Quong Hop & Co*., No. C 08-3953 JF (PVT), 2009 WL 1974483, at *3 (N.D. Cal. Jul. 7, 2009) (fact that proponents of settlement are experienced in this type of litigation supports preliminarily approving a proposed class action settlement); *Louie v. Kaiser Health Plan, Inc.*, No. 08CV0795, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) (experience and views of counsel weigh in favor of preliminary approval); *Gribble v. Cool Transports Inc*., No. CV 06-04863 GAF, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV*, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004)); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig*., MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (counsel's belief that the proposed settlement represented most beneficial result for the class is compelling factor in approving settlement).

PLTFS' NOT. OF MOT. & UNOP. MOT. FOR PRELIM. APP. OF CLASS ACTION SET., CLASS CERT.,
ISSUANCE OF NOT. & SETTING OF DATE & MEMO OF P&AS
CASE NO. 17-CV-3400-CW

1    day-long mediation session had failed to result in an agreement, resulting in weeks of additional

2    negotiations and discussions.

3        Finally, the fact that the Settlement is consistent with the terms of a "mediator's proposal"

4    made by an independent and highly respected mediator (Robert Meyer), only strengthens the

5    strong initial presumption of fairness here. *In re Michael Milken & Assoc. Sec. Litig.,* 150 F.R.D.

6    57, 66 (S.D.N.Y. 1993); *see also, e.g., Roberts v. TJX Companies, Inc.,* No. 13-CV-13142, 2016

7    WL 8677312, at *6 (D. Mass. Sept. 30, 2016) ("the participation of an experienced mediator[]

8    also supports the Court's finding that the Settlement is fair, reasonable, and adequate")*; In re*

9    *Viropharma Inc. Sec. Litig.,* No. CV 12-2714, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016)

10   (the "participation of an independent mediator in settlement negotiations virtually insures [sic]

11   that the negotiations were conducted at arm's length and without collusion between the parties")*.*

12   In any event, for the additional reasons set forth below, the proposed Settlement falls well within

13   the range of what could be found "fair, reasonable and adequate" such that notice should issue

14   and a final approval hearing scheduled.

15                **2.        The Proposed Settlement Is Fair, Reasonable and Adequate**

16       Ninth Circuit law identifies seven factors to consider in deciding whether to grant *final*

17   approval of a class action settlement, including:  (1) the strength of the plaintiffs' case; (2) the

18   risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class

19   certification; (4) the amount of the settlement; (5) investigation or discovery conducted; (6) the

20   experience and views of counsel; and (7) the reaction of class members. *In re Skilled Healthcare*

21   *Grp., Inc. Sec. Litig*., No CV 09-5416-DOC, 2011 WL 280991, at *2 (C.D. Cal. Jan 26, 2011),

22   citing *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003).   Each of the applicable Boeing

23   factors also supports preliminary approval.

24                **a.        Strength of Plaintiffs' Case and Risks of Further Litigation**

25       This case was plainly complex, involving disputed issues as to the design, testing and

26   reliability of an atherectomy product, Pantheris, that incorporated what the Company claimed was

27   novel technology and product features.  Plaintiffs believed that there their claims had merit, but

28

                                                 12

1   recognized that success at trial would necessarily involve an inherently unpredictable "battle of

2   experts," with Defendants arguing that the Pantheris met all FDA requirements for approval, and

3   that any design or reliability "issues" were no greater than what any reasonable investor would

4   expect in the first commercial version of a "cutting edge" medical device product.

5       Moreover, although Plaintiffs' claims under the Securities Act did not require proof of

6   fraudulent intent, Defendants raised a number of arguments as to why such claims should not

7   even get past their pending motions to dismiss as a matter of law.  For example, although

8   Plaintiffs alleged that the Pantheris suffered from various undisclosed problems as of the January

9   2015 IPO, Defendants argued that this did not impose on them a "duty to predict" that a

10  somewhat different "version 2.0" of the Pantheris (the first version actually marketed for

11  commercial sale) would experience disappointing sales when it was launched in March 2016 –

12  more than a year after the IPO.  In addition, Defendants argued that they had no reason to

13  "predict" that users of the commercial version of Pantheris would experience any significant

14  reliability problems, given that medical practitioners who had been using the (original) version

15  1.0 device in clinical trials during the period leading up to the IPO had not experienced such

16  problems.  They also argued, relatedly, that they would have had valid defenses under, *e.g.*, the

17  PSLRA's "safe harbor" for forward-looking statement, the "bespeaks caution" doctrine, and the

18  "opinion doctrine."  Again, Plaintiffs believe that they had good responses to such arguments

19  (*e.g.*, that limited usage in clinical trials is not an adequate substitute for testing based on more

20  rigorous "real world" conditions of heavier usage, and that any problems were sufficiently

21  concrete to render the bespeaks caution, forward-looking statement, and opinion doctrines all

22  inapplicable).  In short, however, establishing Plaintiffs' claims would have required overcoming

23  multiple factual and legal challenges.

24      Proving Plaintiffs' claims under the Exchange Act would have raised only additional

25  challenges, as they would have required, as an additional element, proof of Defendants' scienter

26  (or fraudulent intent).  Again, Plaintiffs believed that they had a reasonable basis for alleging

27  certain Defendants' knowledge of internal disputes within the Company as to the adequacy of the

28

13

1   Company's testing protocols and the existence of design problems, but there could be no

2   assurance that a Court or jury would find that knowledge of internal differences of opinion

3   equated to knowledge of problems of sufficient magnitude to require public disclosure.

4          Moreover, Defendants raised a number of loss causation arguments relevant to both

5   Plaintiffs' Securities and Exchange Act claims.  In particular, Defendants argued that – even

6   assuming *arguendo* that Plaintiffs might establish liability of some of their claims – their liability

7   would not extend to any damages allegedly suffered after July 12, 2016, when Avinger first

8   announced (based on its first full quarter of commercial Pantheris sales) that its commercial

9   customers had experienced certain issues with the Pantheris product and that the Company needed

10  to take steps to try to improve it.  Again, Plaintiffs would have argued that Avinger's disclosures

11  of July 12, 2016 were only partial, but Avinger would have argued that after that date the market

12  was "on notice" of the specific problems that were the basis for Plaintiffs' complaint.  Moreover,

13  even as to the price decline Avinger shares experienced immediately after the July 12, 2016

14  disclosures, Defendants had arguments that only a fraction of those losses were due to disclosures

15  of what Plaintiffs claimed had been concealed, and that the bulk of that decline (and of the later,

16  lesser declines alleged in the Complaint) were due to disclosures of unrelated matters.

17         Finally, at the time that the Court directed the parties to pursue alternative dispute

18  resolution, Avinger's financial condition had deteriorated to a point where there were serious

19  questions as to its ability to pay any judgment that might be rendered against it had this case been

20  litigated to trial – and its condition remains uncertain today.  For example, as of the close of

21  business as of the date of the filing of this brief, the ***entire*** market capitalization of Avinger is

22  only a little over $6 million, based on its closing share price of only $1.26.[6]

23         It is well established that even "ordinary" securities class actions present significant

24  hurdles to proving liability and damages.  *See, e.g., In re AOL Time Warner Sec. & ERISA Litig.*,

---

[6]    It should also be noted that Avinger's shares underwent a 1-for-40 reverse stock split in January 2018.  In other words, but for this reverse split, Avinger shares would be trading for roughly $0.03 per share.  This compares to the recovery under the proposed Settlement here of an estimated $0.18 per share.

14

No. MDL 1500, 2006 WL 461513, at *11 (S.D.N.Y. Apr. 6, 2006) ("the difficulty of establishing liability is a common risk of securities litigation"). This case was certainly no exception.

### b. Expense, Complexity and Duration of Further Litigation

Courts consistently identify the complexity, expense, and likely duration of litigation as key factors in evaluating a settlement's reasonableness, especially in the securities class action context. *See, e.g., AOL Time Warner*, 2006 WL 903236 at *8 (S.D.N.Y. Apr. 6, 2006) (due to their "notorious complexity," securities class actions often settle to avoid "the difficulty and uncertainty inherent in long, costly trials"). As noted above, this case was plainly complex as both a factual and legal matter. For example, as a factual matter, the case involved disputed issues relating to a cutting edge medical device. And the complexity of just some of the legal issues has already been discussed immediately above.

As for duration of further litigation, continued litigation through decision on the pending motions to dismiss, fact discovery, expert discovery, summary judgment, trial, and post-judgment motions and appeals (followed by efforts to enforce the judgment) would likely take years before a final judgment could be obtained and collected for the benefit of the Class. *See, e.g., Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). By contrast, the proposed Settlement will result in an immediate benefit for eligible claimants. In sum, the proposed Settlement ensures a significant recovery now, while eliminating the risk of a lesser recovery (or no recovery at all) after years of further complex and expensive litigation. This factor thus also strongly supports approval.

### c. The Risks of Maintaining the Class Action Through Trial

Lead Plaintiffs do not believe that this is a significant factor here, but note that there is always some risk that an action, or particular claims, may not be maintainable through trial on a class-wide basis. *See, e.g., Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"). Thus, this factor also supports preliminary approval.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### d.    The Amount of the Settlement

As noted earlier, the $5 million recovery here is just below the median $6 million settlement value for all settled securities class actions in 2017.  *See* S. Starykh & S. Boettrich, *Recent Trends in Securities Class Action Litigation*: 2017 Full Year Review 30 (NERA ECONOMICS Jan. 29, 2018), available at www.nera.com.  And as noted in footnote 5 above, the estimated average recovery per damaged share of $0.15 is particularly noteworthy when one considers that, on an apples-to-apples (pre-reverse 1-for-40 stock split) basis, Avinger shares are currently trading at only about $0.03 per share, and the proposed recovery almost equals Avinger's total current market capitalization of roughly $6 million.  Especially given the litigation risks involved and the prospects of obtaining far less or nothing had the case been litigated through trial – and that the Settlement amount was ultimately based on the independent Mediator's "mediator's proposal," this factor also supports preliminary approval.

### e.    Investigation or Discovery Conducted, and the Experience and Views of Counsel

Both of these factors have already been discussed above at §B.1.  In sum, this case was settled only after Plaintiffs' Counsel had conducted an extensive investigation, briefed the relevant legal issues and marshaled their arguments for the independent Mediator in an arms-length ADR process (as contemplated by the Court's October 2017 Order), and engaged in weeks of further hard-fought negotiations.  And all three Plaintiffs' Counsel firms, who each have substantial experience in complex class actions, support the proposed Settlement.

### f.    Reaction of the Class

Because notice of the Settlement has not yet been disseminated to absent Class members, this factor is not relevant at preliminary approval.  Should any objections be received after notice is issued, Lead Counsel will address them at the final approval phase.

### g.    Summary

In sum, when weighing the value of the $5 million "bird in the hand" against the risks inherent in further protracted proceedings, and taking into consideration the other relevant *Boeing*

---

16

1    factors, the proposed Settlement falls well within "range of reasonableness" that merits issuance

2    of Notice to the Class

3              **3.      The Plan of Allocation Should Be Preliminarily Approved**

4            The proposed Plan of Allocation ("POA") for distributing the proceeds of the Net

5    Settlement Fund is set forth the proposed Notice (*see* Stip., at Exhibit A-1, at 26-32, section

6    entitled "Proposed Plan of Allocation of Net Settlement Fund Among Class Members"), and was

7    prepared with the assistance of Plaintiffs' Counsel's damages expert.

8            The amount of a Class Member's distribution from the Net Settlement Fund under the

9    POA depends on whether and to what extent that that Class Member has a "Recognized Loss" on

10   their Avinger transactions.  The calculation of "Recognized Loss" depends on several factors, and

11   especially on (a) when the Class Member purchased their Avinger shares, and (b) and when they

12   sold them (or if they held them through the end of the Class Period).  The POA takes into account

13   the damages that Plaintiffs' Counsel and their expert believe could have been shown at trial, while

14   also discounting recoveries on eligible shares that have, at best, only claims under the Exchange

15   Act (given that such claims, unlike claims under the Securities Act, require proof of *scienter* and a

16   far more stringent showing of loss causation, among other things).  Thus, Class Member claims

17   that are based on Avinger shares *purchased* on or before May 5, 2016 are entitled to a higher

18   recovery under the POA because they have a basis for asserting certifiable claims under *both* the

19   Securities Act and the Exchange Act, whereas "recognized losses" on Avinger shares purchased

20   *after* May 5, 2016 are subject to a significant discount because such shares are entitled to damages

21   (if at all) only under the Exchange Act.  In addition, under the POA, the amount of a Class

22   Member's "recognized loss" (if any) also depends significantly on when the Class Member *sold*

23   their shares, as shares that were sold prior to the first alleged "corrective disclosure" (*i.e.*, on or

24   before July 12, 2016) are deemed to have suffered no damages from any of alleged misstatements

25   or omissions.  In addition, Class Members are entitled to only discounted "recognized losses" on

26   those shares that they sold after July 13, 2016, in light of Defendants' arguments that they could

27

28

1   establish that "loss causation" problems would bar any recovery based on market declines in

2   Avinger shares suffered after that date.

3       In short, because the POA is based upon Plaintiffs' theories of the case and reflects the

4   fact that the strength of a given Class Member's claims depends on the timing of their purchases

5   and sales, the POA plainly merits preliminary approval. *See, e.g, In re Skilled Healthcare Grp.,*

6   *Inc., Sec. Litig.,* No. CV 09-5416, 2011 WL 280991, *4 (C.D. Cal. Jan. 26, 2011) (plan of

7   allocation approved where it reflected timing of securities transactions and allocated more of

8   settlement to class members with stronger claims on the merits) (citation omitted); *In re Am. Bank*

9   *Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (even at *final*

10  approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant

11  approval], particularly if recommended by 'experienced and competent' class counsel").

12      **C.      The Proposed Forms and Method of Providing Notice to the Class Are
                  Appropriate and Satisfy Fed. R. Civ. P. 23, the PSLRA, and Due Process**

13      Rule 23(e) governs notice requirements for class action settlements, and provides that a

14  class action may only be dismissed or compromised with judicial approval, after issuance of

15  appropriate notice to the Class.  Here, the parties propose to give individualized notice by first

16  class mail by sending copies of the Notice and the Proof of Claim form (Stip. Exhibits A-1 and A-

17  2), to all Class Members who can be identified with reasonable effort, as well as to brokerage

18  firms and other nominees who regularly act as nominees for beneficial purchasers of stock.

19      Here, the parties have drafted the proposed Notice Plan to provide the best notice

20  practicable to the Class, and respectfully submit that the Notice (which is based largely on the

21  illustrative class action settlement notice developed by the Federal Judicial Center and what this

22  Court previously approved in *Curry v. Hanson Medical, Inc.,* No. 4:09-cv-05094-CW, 2013 WL

23  12174649 (N.D. Cal. Dec. 5, 2013)) and the Summary Notice, annexed as Exhs. A-1 and A-3 to

24  the Stipulation and [Proposed] Preliminary Approval Order, is adequate in all respects.  For

25  example, as required by Rule 23(c)(2), the Notice will inform Class Members of the claims

26  alleged in the Action, of the terms of the proposed Settlement, and of their rights as Class

27  Members to either (a) opt out or (b) object to the Settlement, Plan of Allocation and/or the

28

18

proposed award of attorneys' fees and expenses.  *Stratton v. Glacier Ins. Adm'rs,* Inc., No. 1:02-CV-06213, 2007 WL 274423, at *14 (E.D. Cal. Jan. 29, 2007) (notice adequate if it "fairly apprises class members of the [settlement's] terms in sufficient detail to afford them the opportunity to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement"); *Churchill Village, L.L.C. v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004) (notice satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard'") (citation omitted).

The Notice satisfies the foregoing basic Rule 23 requirements by setting forth in plain, easily understandable language:  (a) the nature of the action and the claims at issue; (b) the definition of the Class; (c) Class Members' rights to be excluded and how to exercise those rights; (c) Class Members' rights to object to the proposed Settlement, Plan of Allocation, any requested Fee and Expense Application, or any other matter relating to the Settlement; and (d) the time, date, and location of the Settlement Hearing.  The Notice also meets the requirements of the PSLRA, 15 U.S.C. §78u 4(a)(7), by providing, *inter alia*, a statement of:  (a) the estimated average recovery per damaged share; (b) the estimated average cost per damaged share of requested attorneys' fees and expenses and costs of notice and claims administration; (c) the potential outcome of the case including a statement concerning the issue or issues on which the parties disagree; (d) the attorneys' fees and expenses sought; (e) how to contact the Claims Administrator and/or Lead Counsel, including names, addresses, telephone numbers, and websites; and (f) the reasons for proposed Settlement and the factors that Plaintiffs considered in reaching it.

In addition, the proposed Summary Notice (Exh. 3 to the proposed Preliminary Approval Order) will be published in *PR Newswire* and in the print edition of *Investor's Business Daily*, two well-known, widely circulated business oriented publications.  Publication notice through these two vehicles is routinely approved.  *See, e.g., Skilled Healthcare*, 2011 WL 280991, at *1. In sum, the proposed Notices and notice plan should be approved.  *Portal Software Inc.*, 2007 WL

1  1991529, at *7 (agreeing that "notice by mail and publication is the 'best notice practicable under

2  the circumstances'"); *Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc.*, 439 F.3d

3  165, 176 (2d Cir. 2006) (notice by mail and publication sufficient).

4        **D.**      **Appointment of KCC as Claims Administrator**

5        Plaintiffs also respectfully request that the Court appoint KCC as the Claims

6  Administrator.  As such, KCC will be responsible for, *inter alia,* mailing the Notice to Class

7  Members, administering the settlement website and 1-800 call center line, and processing Proofs

8  of Claim.  Lead Counsel recommend KCC based on the firm's extensive experience and on its

9  having submitted the best bid in a competitive bidding process.

10  **II.**      **THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS**

11        At preliminary approval, the Court should also consider whether certification of the Class

12  appears to be appropriate.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Jaffe*

13  *v. Morgan Stanley & Co. Inc.*, No. C-06-3903-TEH, 2008 WL 346417, at *2 (N.D. Cal. Feb. 7,

14  2008).

15        As Ninth Circuit case law makes clear, class certification is favored in securities fraud

16  actions such as this.  *See generally Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975); *see*

17  *also In re THQ, Inc., Sec. Litig.,* No. CV 00-1783, 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22,

18  2002) ("the law in the Ninth Circuit is very well established that the requirements of Rule 23

19  should be liberally construed in favor of class action cases brought under the federal securities

20  laws"); *Yamner v. Boich*, No. C-92-20597 RPA, 1994 WL 514035, at *2 (N.D. Cal. Sept. 15,

21  1994) ("Ninth Circuit favors a liberal use of class actions to enforce federal securities laws").

22  Indeed, "[a]s the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a

23  glove.'"  *Todd v. STAAR Surgical Co,* No. CV-14-05263, 2017 WL 821662, at *3 (C.D. Cal. Jan.

24  5, 2017) (citing *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds*,

25  *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367 (1996)).  Accordingly, especially in

26  securities fraud cases, "[a]ny doubts a court has about class certification should be resolved in

27

28

PLTFS' NOT. OF MOT. & UNOP. MOT. FOR PRELIM. APP. OF CLASS ACTION SET., CLASS CERT.,
ISSUANCE OF NOT. & SETTING OF DATE & MEMO OF P&AS
CASE NO. 17-CV-3400-CW

1  favor of certification." *Todd,* 2017 WL 821662, at *3, (quoting *Gable v. Land Rover N. Am., Inc.,*

2  No. SACV 07-0376 AG RNBX, 2011 WL 3563097, at *3 (C.D. Cal. July 25, 2011)).

3      A class may be certified if it (a) meets the familiar tests of numerosity, commonality,

4  typicality and adequacy under Fed. R. Civ. P. 23(a); and (b) also satisfies the predominance and

5  superiority criteria under Fed. R. Civ. P. 23(b)(3). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617

6  F.3d 1168, 1172 (9th Cir. 2010); *Jaffe*, 2008 WL 346417, at *7.

7      **A.    Numerosity**

8      Rule 23(a)(1) requires the class to be so large that joinder of all members is impracticable.

9  The purchasers of Avinger's common stock during the Class Period, and hence the number of

10  members of the Class, number in the hundreds, if not thousands.  For example, as alleged in the

11  Complaint, roughly 5 million shares of Avinger common stock were issued in the IPO and were

12  thereafter fully tradable on the NASDAQ.    Additionally, the Class Members are located

13  throughout the United States.  A group this large and geographically diverse is too large and

14  unwieldy to join in a single action. *See In re Infineon Techs. AG Sec. Litig*., 266 F.R.D. 386, 393

15  (N.D. Cal. 2009) (Courts may assume that the numerosity requirement is met in securities fraud

16  suits involving nationally traded stocks.).

17      **B.    Commonality**

18      A proposed settlement class has sufficient commonality to justify certification where there

19  are substantial questions of law and fact common to the class. *See Wolin*, 617 F.3d at 1172. "The

20  existence of shared legal issues with divergent factual predicates is sufficient, as is a common

21  core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at

22  1019.  Here, there are numerous questions of law and fact common to the Class.  If the Action

23  were to proceed, such common questions would include whether the provisions of the Exchange

24  Act were violated by the Defendants' acts as alleged in Plaintiffs' Complaint; whether statements

25  issued by Defendants to the investing public misrepresented material facts about the Company

26  and its business and whether the revelation of the truth about Defendants' alleged

27  misrepresentations caused a decline in the price of Avinger common stock.  In the context of the

28

21

1   Class, additional common questions include whether the proposed Settlement is fair, reasonable

2   and adequate; and whether the proposed Settlement should be approved.[7]  Thus, the Class should

3   be preliminarily certified.

4        **C.      Typicality**

5        The claims of the named Plaintiffs in this Action, the proposed Class Representatives, are

6   typical of the claims of the other members of the Class.  "Under the rule's permissive standards,

7   representative claims are 'typical' if they are reasonably co-extensive with those of absent class

8   members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  Like the other

9   Class Members, these Plaintiffs (consisting of Lead Plaintiffs Banerjee and Harjai, and additional

10  named plaintiffs Grotewiel and Vogel) (collectively, "Named Plaintiffs") purchased Avinger

11  securities during the Class Period, at a time when Defendants' alleged misrepresentations had not

12  been disclosed.  *See* the Named Plaintiffs previously submitted affidavits in support of their

13  respective Lead Plaintiff motions, ECF Nos. 42-2, 42-3, 44-1, 70-1.  Named Plaintiffs allege that

14  Defendants' undisclosed misrepresentations resulted in artificial inflation of the price of the

15  Avinger common stock that Named Plaintiffs purchased, and that, upon disclosure of the alleged

16  misrepresentations, the value of the common stock purchased by Named Plaintiffs declined.  The

17  other members of the Class were similarly affected.  Accordingly, the typicality requirement is

18  met.  *See also Todd*, 2017 WL 821662, at *5 (courts generally find typicality where named

19  plaintiffs bought and sold "'subject to the same information and representations as the market at

20  large'").

21       **D.      Adequacy**

22       The "adequacy" inquiry in this Circuit under Rule 23(a)(4) is typically limited to an

23  assessment of the qualifications of the movant's counsel and of whether the proposed class

24  representatives or their counsel have any "fundamental" conflicts of interest that disqualify them

25  _____

26  [7]      "All questions of fact and law need not be common to satisfy the rule. The existence of
    shared legal issues with divergent factual predicates is sufficient, as is a common core of salient
    facts coupled with disparate legal remedies within the class."  *Hanlon*, 150 F.3d at 1019; *accord*
27  *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).

28

from serving as fiduciaries for the proposed class.    7A Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE §1768 (3d ed. 2005) ("only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status").

Here, Named Plaintiffs Grotewiel and Vogel brought the original Action, and Named Plaintiffs Banerjee and Harjai thereafter joined the litigation.  All have since faithfully served the interests of the Class.  Similarly, proposed Class Counsel and existing Lead Counsel, Scott+Scott, conducted the significant additional investigative work that went into the Amended Complaint, led the briefing and other preparation for the mediation, and ultimately concluded the proposed Settlement.  Moreover, Lead Counsel respectfully submit that they are plainly qualified to serve as Class Counsel based on their extensive experience in prosecuting securities class actions.  *See* ECF No. 42 (attaching Scott+Scott firm résumé); *see also* ECF No. 83 at 7 (referencing this Court's prior approval of Scott+Scott as lead counsel in this Action "based on the information submitted regarding the firm's experience and expertise in the area of securities litigation").

Having adequately protected and advanced the interests of the Class, and absent any "fundamental" conflicts, the adequacy requirements of Rule 23(a)(4) are met.

### E.    Predominance and Superiority

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[8]

**Predominance**.  Here, questions of law or fact common to the members of the Class plainly predominate over any questions affecting only individual members.  In particular, issues as to whether Defendants' statements in the Offering Documents and thereafter were materially false, misleading or incomplete plainly predominate over individual issues.  In addition, although

---

[8]    Where a case is likely to be litigated, courts also consider whether class certification would raise trial manageability concerns.  However, "manageability at trial" is not a factor where, as here, certification is sought in a settlement context, because "when settlement-only certification is requested . . . the proposal is that there be no trial."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

1    reliance is not even an element of the Securities Act claims asserted here, reliance poses no

2    obstacle to certification even as to Class Members' Exchange Act claims, as they may all rely on

3    the fraud on the market presumption of reliance because Avinger was actively traded in an

4    efficient market.  *See Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) (citing *Basic Inc. v.*

5    *Levinson*, 485 U.S. 224, 242 (1988)).[9]

6        As demonstrated by the foregoing, the proposed Class satisfies each of the requirements

7    for the certification of a class pursuant to Rule 23(a) and the requirements for Rule 23(b)(3).  The

8    certification of the Class is therefore warranted.

9        **Superiority**.  Here, damages suffered by members of the Class are not sufficient to make

10    it economical to prosecute separate actions in order to recover individual losses sustained as a

11    result of Defendants' alleged violations of the securities laws.  *Amchem Prods.*, 521 U.S. at 617

12    ("The policy at the very core of the class action mechanism is to overcome the problem that small

13    recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action

14    solves this problem. . . .").  Accordingly, a class action is superior to other available methods for

15    the fair and efficient adjudication of the controversy.

16    **III.    THE PROPOSED SCHEDULE FOR THE SETTLEMENT FAIRNESS HEARING,**
         **THE SUBMISSION OF REQUESTS TO OPT-OUT, AND OTHER DEADLINES**
17         **SHOULD BE APPROVED**

18        If preliminary approval is granted, the parties request that the final Settlement Fairness

19    Hearing be set on a date falling on or after 120 days from the date of the entry of the Preliminary

20    Approval Order.  Assuming that such an Order is entered on or before June 1, 2018, Plaintiffs

21    _____

22    [9]    An efficient market is one that rapidly reflects new information in price, such that
     security prices fully reflect all available information.  *Binder*, 184 F.3d at 1065.  Indeed, in
23    securities class actions, "requiring proof of direct reliance 'would place an unnecessarily
     unrealistic evidentiary burden on [a] plaintiff who has traded on an impersonal market.'"  *Amgen*
24    *v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1192 (2013) (alteration in original).
     Here, it is uncontested that Avinger's common stock was traded on the NASDAQ, a national
25    exchange; that the Company was followed by multiple analysts; and that Avinger's stock price
     reacted to disclosures of new public information.  *See, e.g., Cammer v. Bloom*, 711 F. Supp.
26    1264 (D.N.J. 1989) (setting forth tests for showing market efficiency); *see also Todd*, 2017 WL
     821662, at *6 ("'[T]he federal courts are unanimous in their agreement that a listing on the
27    NASDAQ or a similar national market is a good indicator of efficiency'").

28

24

1  propose a date falling between Monday, October 1 and Friday, October 19, 2018.  Such a date

2  would be sufficiently far in the future to allow time for the dissemination of the Notice and for

3  Class members to decide whether to participate in, opt out of, or raise any objections with regard

4  to the proposed Settlement, while not unduly delaying the hearing into the late fall.

5          The date of any Settlement Fairness Hearing that is scheduled should be inserted at

6  page 2, ¶2 of the [Proposed] Preliminary Approval Order (assuming that it otherwise meets with

7  the Court's approval).  No other dates need be inserted in that Order, as all other dates and

8  deadlines that would be established under the Order can be calculated from either (a) the date of

9  the entry of the Preliminary Approval Order, or (b) the date of the Settlement Fairness Hearing.

10                                  **CONCLUSION**

11          The Court should enter the [Proposed] Preliminary Approval Order.

12  Dated:  May 9, 2018                    Respectfully submitted,

13                                          **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

14                                          <u>s/ John T. Jasnoch</u>
                                            John T. Jasnoch (CA 281605)
15                                          600 W. Broadway, Suite 3300
                                            San Diego, CA 92101
16                                          Telephone:  (619) 233-4565
                                            Facsimile:  (619) 233-0508
17                                          jjasnoch@scott-scott.com

18                                          William C. Fredericks (*pro hac vice*)
                                            Sean T. Masson
19                                          **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                            The Helmsley Building
20                                          230 Park Avenue, 17th Floor
                                            New York, NY 10169-1820
21                                          Telephone:  (212) 223-6444
                                            Facsimile:  (212) 223-6334
22                                          wfredericks@scott-scott.com
                                            smasson@scott-scott.com
23
                                            *Lead Counsel for Plaintiffs and the Proposed Class*
24

25                                          Robert V. Prongay
                                            Ex Kano S. Sams II
26                                          **GLANCY PRONGAY & MURRAY LLP**
                                            1925 Century Park East, Suite 2100
27                                          Los Angeles, CA 90067
                                            Telephone:  (310) 201-9150
28
                                            25

Facsimile:   (310) 201-9160
rprongay@glancylaw.com
esams@glancylaw.com

Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)
**BOTTINI & BOTTINI, INC.**
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA  92037
Telephone:  (858) 914-2001
Facsimile:   (858) 914-2002
fbottini@glancylaw.com

*Additional Counsel for Plaintiffs*

PLTFS' NOT. OF MOT. & UNOP. MOT. FOR PRELIM. APP. OF CLASS ACTION SET., CLASS CERT.,
ISSUANCE OF NOT. & SETTING OF DATE & MEMO OF P&AS
CASE NO. 17-CV-3400-CW

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury under the laws of the United States of America that, on May 9, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses for all counsel of record (which includes counsel for all parties) in this action

*s*/ John T. Jasnoch
John T. Jasnoch (CA 281605)