John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
jjasnoch@scott-scott.com

William C. Fredericks (admitted *pro hac vice*)
Sean T. Masson
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
wfredericks@scott-scott.com
smasson@scott-scott.com

*Attorneys for Lead Plaintiffs Banerjee & Harjai*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| ARINDAM BANERJEE, et al., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> AVINGER, INC., JEFFREY M. SOINSKI, MATTHEW B. FERGUSON, DONALD A. LUCAS, JOHN B. SIMPSON, JAMES B. MCELWEE, JAMES G. CULLEN, THOMAS J. FOGARTY, CANACCORD GENUITY INC., COWEN AND COMPANY, LLC, OPPENHEIMER & CO. INC., BTIG, LLC, and STEPHENS INC., <br><br> Defendants. | Case No.: 4:17-cv-03400-CW <br><br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:  October 23, 2018 <br> Time:  2:30 p.m. <br> Judge:  The Honorable Claudia Wilken |

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................ 2

II.     LITIGATION HISTORY ....................................................................................... 4

        A.      Nature of the Action ................................................................................ 4

        B.      Procedural History ................................................................................... 5

        C.      The Negotiation of the Settlement ........................................................... 6

III.    SUMMARY OF THE TERMS OF THE SETTLEMENT .................................... 8

IV.     THE STANDARDS GOVERNING FINAL JUDICIAL APPROVAL OF CLASS
        ACTION SETTLEMENTS ..................................................................................... 9

V.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ......... 10

        A.      The Settlement Enjoys an Initial Presumption of Reasonableness
                Because It Is the Product of Arm's-Length Settlement Negotiations
                Conducted Under the Auspices of an Experienced Mediator .................. 10

        B.      Each of the *Boeing* Factors Also Supports Final Approval ..................... 11

                1.      The Strength of Plaintiffs' Case and Risks of Further Litigation ................ 11

                        a.      Risks of Proving Liability ................................................. 12

                        b.      Risks Relating to Loss Causation and Proof of Damages ............... 14

                2.      The Expense, Complexity, and Duration of Further Litigation .................. 15

                3.      The Risks of Maintaining Class Certification Through Trial ..................... 16

                4.      The Amount of the Settlement ................................................. 16

                5.      Investigation or Discovery Conducted and Views of Experienced
                        Counsel .................................................................................. 17

                6.      Reaction of the Class ............................................................. 17

                7.      Summary ............................................................................... 18

VI.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ..................... 18

VII.    CONCLUSION ...................................................................................................... 19

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*In re AOL Time Warner, Inc.*,
   No. 02 Civ. 5575(SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................15

*Beecher v. Able*,
   575 F.2d 1010 (2d Cir. 1978) ................................................................................................18

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228 (5th Cir. 1982) .................................................................................................18

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...............................................................................................18

*In re Excess Value Ins. Coverage Litig.*,
   No. M-21-84RMB, 2004 WL 1724980 (S.D.N.Y. July 30, 2004) ..........................................10

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992)...................................................10

*Gerardo v. Quong Hop & Co.*,
   No. C 08-3953 JF (PVT), 2009 WL 1974483 (N.D. Cal. July 7, 2009) ..................................10

*Gribble v. Cool Transps. Inc.*,
   No. CV 06-04863 GAF, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008)...................................10

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
   142 F.R.D. 588 (S.D.N.Y. 1992)............................................................................................18

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)...........................................................................................9, 18

*In re Ikon Office Sols., Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) .............................................................................................18

*In re: Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................................................................................16

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977)..................................................................................................9

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)...................................................................................................12

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993)..............................................................................................11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................................9, 12

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982)..............................................................................................9, 10

ii

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................9

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006) ................................................................................9

*In re Portal Software, Inc. Sec. Litig.*,
    No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007).................................10, 11

*Roberts v. TJX Cos., Inc.*,
    No. 13-cv-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) .....................................11

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*,
    No. CV 09-5416 DOC, 2011 WL 280991 (C.D. Cal. Jan. 26, 2011) .........................................9

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003).................................................................................9, 11

*Thacker v. Chesapeake Appalachia, L.L.C.*,
    695 F. Supp. 2d 521 (E.D. Ky. 2010), *aff'd sub nom.*
    *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) .........18

*Util. Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989)...................................................................................9

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976)...................................................................................9

*In re Viropharma Inc. Sec. Litig.*,
    No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ...................................................11

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985).............................................................................15

*White v. NFL*,
    822 F. Supp. 1389 (D. Minn. 1993) ...........................................................................18

**STATUTES, RULES & REGULATIONS**

FED. R. CIV. P. 1 ............................................................................................................9

**OTHER AUTHORITIES**

L. Bulan, E. Ryan & L. Simmons, *Securities Class Action Settlements: 2017*
    *Review and Analysis*, CORNERSTONE RESEARCH (2018) ......................................................16

S. Starykh & S. Boettrich, *Recent Trends in Securities Class Action Litigation:*
    *2017 Full Year Review*, NERA ECONOMICS (Jan. 29, 2018).................................................16

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on October 23, 2018, at 2:30 p.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Claudia Wilken, District Judge, at the U.S. District Court for the Northern District of California, Oakland Division, 1301 Clay Street, Oakland, CA 94612, Plaintiffs will respectfully move, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for entry of: (A) the [Proposed] Final Judgment and Order of Dismissal with Prejudice (the "Final Judgment") (attached hereto as Exhibit 1); and (B) the [Proposed] Order Approving Plan of Allocation (attached hereto as Exhibit 2).[1]

Plaintiffs' motion is based on the following Memorandum of Points and Authorities in support thereof; Joint Declaration of William C. Fredericks, Ex Kano S. Sams II, and Francis A. Bottini, Jr. in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plaintiffs' Counsel's Motion for Award of Attorneys' Fees and Expenses (the "Joint Declaration"); the respective Declarations of Class Representatives Harjai, Banerjee, Grotewiel, and Vogel in support of the Motion for Final Approval and Application for an Award of Reasonable Costs and Expenses Under 15 U.S.C. §78U-4(a)(4); Declaration of Lance Cavallo (of the Court-appointed claims administration firm) Regarding (A) Mailing of the Notice and Proof of Claim Form; (B) Publication of Summary Notice; (C) Establishment of Telephone Hotline; (D) Establishment of Settlement Website; and (E) Report on Requests for Exclusion Received to Date ("Cavallo Decl."); Stipulation of Settlement, dated as of May 9, 2018 (ECF No. 115-3) (the "Stipulation" or "Settlement"); all other pleadings and matters of record; and such additional evidence and testimony as may be presented before or at the hearing.

---

[1] The term "Plaintiffs" collectively refers to the "Federal Plaintiffs" in this above-captioned action (hereinafter, the "Action" or "Federal Action") and the named plaintiff (the "State Plaintiff") in a separate action, captioned *Gonzalez v. Avinger, Inc.* (the "State Action"), presently pending in the Superior Court of California, San Mateo County (the "State Court"). The term "Federal Plaintiffs" collectively refers to the four named plaintiffs in this Action, namely Lead Plaintiffs and Class Representatives Arindam Banerjee, M.D. ("Banerjee"), and Jogesh Harjai, M.D. ("Harjai"), plus additional Class Representatives Lindsay Grotewiel ("Grotewiel") and Todd Vogel ("Vogel"). "Plaintiffs' Counsel" collectively refers to all counsel in both the Federal and State Actions. All other capitalized terms not otherwise defined herein have the same meaning as set forth in the Stipulation that was filed with the Court on May 9, 2018 (ECF No. 115-3).

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs submit this memorandum in support of their Motion for Final Approval of the proposed $5,000,000 all cash Settlement, which provides for the global resolution of all securities claims at issue in this Federal Action as well as those asserted in the separate State Action pending in State Court.  Plaintiffs also seek final approval of the proposed Plan of Allocation.  The terms of the Settlement are set forth in the Stipulation, which the Court preliminarily approved in its Order Preliminarily Approving Settlement and Providing for Notice on June 13, 2018, ECF No. 121 ("Preliminary Approval Order").  The proposed Settlement pending before the Court resolves contested class action litigation in two courts, was the product of protracted and arms-length negotiations conducted under the auspices of a highly experience mediator, Robert M. Meyer, Esq. of JAMS (the "Mediator"), and is based on the material terms of the "mediator's proposal" to resolve the Actions.

The claims at issue have been prosecuted in two different courts against determined opposition.  From the outset, Defendants asserted strong defenses and adamantly denied liability.  As set forth in greater detail in the Joint Declaration, the global Settlement was achieved only after: (a) each Plaintiffs' Counsel firm engaged in its own research and investigation into the claims asserted; (b) the State Plaintiff had succeeded in defeating Defendants' efforts to remove his State Action to this Court; (c) Lead Counsel (at this Court's urging) had succeeded in organizing and coordinating all Plaintiffs' Counsel's efforts to focus on efforts to litigate or settle in this Action; (d) Lead Counsel had conducted a further and expanded investigation into the claims asserted, which included using its in-house investigative staff to identify, locate, and interview former employees of Avinger, Inc. ("Avinger" or the "Company"); and (e) Plaintiffs' Counsel had extensively prepared for, and attended, a full-day, in-person mediation with the Mediator (preparation for which included (i) researching and drafting detailed opening mediation statements; (ii) drafting further reply mediation papers that responded to both Defendants opening mediation statements and the Defendants' two sets of motion to dismiss briefs; and (iii) extensive consultations with Plaintiffs' expert on loss causation and damages issues).  Joint Decl., ¶¶11-31.

Plaintiffs' Counsel in both Actions have concluded that the Settlement represents a highly favorable result for the Class, based on (among other things) their assessment of the relative strengths and weaknesses of the claims and defenses asserted; the substantial risks, expense, and uncertainties of continued litigation vs. the benefits of a meaningful settlement now; their extensive experience in litigating and settling similar securities class actions; published data regarding the median size of settlements in other securities class actions; the amount of reasonably recoverable damages; and the Class's ability to collect on a significantly larger judgment after trial and appeals. *See id.* ¶¶35-48.  In sum, this case represents a classic and appropriate case of taking a meaningful "bird in the hand" instead of taking the substantial risks inherent in pursuing costly and protracted litigation in an efforts to capture a bigger (but elusive and perhaps ephemeral) "bird in the bush."

Although the deadline for filing objections (October 2, 2018) has not yet passed, Class Members appear to agree with Plaintiffs' Counsel's conclusion.  Pursuant to the Court's Preliminary Approval Order, to date, 15,980 copies of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release ("Proof of Claim" and together, with the Notice, the "Notice Package") have been sent to potential Class Members and nominees.  *See* Cavallo Decl., ¶7.  In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire* on July 9, 2018.  *Id.* ¶8.  Copies of the Stipulation, Notice Package, and Preliminary Approval Order have also been posted on the Avinger-specific settlement website (www.Avingersecuritieslitigation.com), which became operational on July 2, 2018 and was prominently identified in the Notice. *Id.* ¶10.  The Notice also informed potential Class Members of the terms of the Settlement and of their right to object or "opt-out" of the Settlement (and of the procedure for exercising those rights).  The Notice further described the Plan of Allocation, that Plaintiffs' Counsel would be seeking an award of attorneys' fees of up to 30% of the Settlement Fund (plus expenses), and that the Class Representatives would be seeking an award under 15 U.S.C. §78u-4(a)(4) to compensate them for their time representing the Class.  To date, however, *no* Class Members have filed an objection to any aspect of the Settlement, Plan of Allocation, counsel's request for an award of attorneys' fees and

3

1   expenses, or the requested §78u-4(a)(4) awards.  Joint Decl., ¶72.  Nor have any Class Members

2   filed any requests to "opt-out."  Cavallo Decl., ¶11.

3           For all of the reasons discussed herein and in the Joint Declaration, it is respectfully

4   submitted that the Settlement, as well as the Plan of Allocation (which was developed in close

5   consultation with Plaintiffs' damages and loss causation expert), are both fair, adequate and

6   reasonable, and should be finally approved by the Court.

7   **II.     LITIGATION HISTORY**

8           **A.     Nature of the Action**

9           Avinger is a commercial-stage medical device company that designs, manufactures, and

10  sells image-guided, catheter-based atherectomy systems that are used by doctors to treat patients

11  with peripheral artery disease by removing plaque from the arteries.  The Pantheris system is

12  Avinger's flagship product.  Plaintiffs allege that Defendants violated §11 of the Securities Act of

13  1933 ("Securities Act") and §10(b) of the Securities Exchange Act of 1934 ("1934 Act") by

14  making materially false and misleading statements in the Offering Documents for Avinger's

15  January 29, 2015 initial public offering (the "IPO"), and thereafter during the Class Period, that,

16  *inter alia*, improperly touted Avinger's business, products, and performance and omitted to state:

17  (1) that Avinger's Pantheris product had substantial reliability issues; (2) that those issues would

18  likely have a negative impact on Pantheris sales and jeopardize Avinger's ability to successfully

19  sell the product after its commercial launch (which took place in 2016); and (3) that, as a result of

20  the foregoing, Defendants' statements regarding Avinger's business, operations, and prospects

21  were materially false, misleading, incomplete, and/or lacked reasonable basis.  *See* Amended

22  Consolidated Class Action Complaint, ECF No. 109 ("Amended Complaint" or "Am. Compl."),

23  ¶¶1-5; Joint Decl., ¶8.

24          Defendants sold approximately 5 million shares to members of the public in its IPO at

25  $13.00 per share.  However, on July 13, 2016 – roughly 18 months after the Offering and four

26  months after the commercial launch of the Pantheris product – Avinger's share price fell 39.7% (or

27  $4.53) after Avinger reported (a) "lower than expected" Pantheris utilization during the second

28  quarter of 2016; and (b) announced that, in response to customer complaints, it was working to

4

implement corrective improvements to the Pantheris product's fiber optic imaging cables and robustness. Plaintiffs further allege that Avinger shares suffered additional, though much smaller, price declines over the following months in response to further partial corrective disclosures in August 2016 and on January 6, March 6, and April 10, 2017 regarding further disappointing Pantheris sales and the need to improve the product. Am. Compl., ¶¶4, 60-76; Joint Decl., ¶9.

### B.    Procedural History

The first securities class action against Defendants (and this Action's direct predecessor) was filed on May 22, 2017 in State Court under the caption *Grotewiel v. Avinger, Inc.*, No. 17-CIV-02240 (Cal. Super. Ct., San Mateo Cty.). Defendants thereafter removed that action (together with two similar actions, *Gonzalez v. Avinger, Inc.*, No. 17-CIV-2284, and *Olberding v. Avinger, Inc.*, No. 17-CIV-2307, that had also originally been filed in State Court) to this Court. On July 21, 2017, this Court granted the motions of the *Gonzalez* and *Olberding* plaintiffs to remand those actions back to State Court. Joint Decl., ¶¶11, 13-14.

Plaintiffs Grotewiel and Vogel, however, decided to remain in this Court. After issuance of notice pursuant to the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), on September 5, 2017 Plaintiffs Banerjee and Harjai moved to be appointed "lead plaintiffs" in the *Grotewiel* case. *See* ECF No. 41. The Court granted that motion on October 11, 2017 and also appointed their counsel (Scott+Scott Attorneys at Law LLP ("Scott+Scott")) as Lead Counsel. *See* ECF No. 83. This Action then proceeded in this Court under a new caption: *Banerjee v. Avinger, Inc.*, No. 17-cv-03400-CW. Meanwhile, the plaintiff in *Olberding* withdrew in the State Court, and in September 2017, the remaining State Plaintiff, Billy Gonzalez, filed an amended complaint for violations of §11 of the Securities Act against all Defendants in the *Gonzalez* case. *See also* Joint Decl., ¶¶15-18.

On October 17, 2017, at the Initial Case Management Conference and in a pre-trial Order issued that same day, this Court, *inter alia*: (1) directed the parties in this Action to explore alternative dispute resolution ("ADR") through either the Court's ADR Program or through private mediation; (2) set an ADR conference date; (3) directed Lead Counsel "to contact [Plaintiff] Grotewiel['s] attorneys [Bottini & Bottini, Inc. ("Bottini & Bottini")] to discuss the prosecution of

this case"; and (4) further directed Lead Counsel to explore "coordination of the state and federal court actions."  ECF No. 88 at 1; Joint Decl., ¶19.

In accordance with the Court's October 17, 2017 Order, and its comments at the October 17 conference – and recognizing that Avinger's limited resources would likely be depleted at an accelerated rate absent efforts to coordinate the State and Federal Actions – Lead Counsel took steps to consult with counsel for all other Plaintiffs in the State and Federal Actions.  As a result of these consultations and discussions, (a) the State Plaintiff agreed to stay the State Action; (b) Plaintiffs Grotewiel and Vogel agreed to join with Lead Plaintiffs Banerjee and Harjai in filing a consolidated class action complaint; and (c) all Plaintiffs' Counsel agreed to try to work together for the common benefit of their clients and any certified class.  Shortly thereafter, on November 21, 2017, Lead Plaintiffs and their counsel (Scott+Scott) – together with Grotewiel and Vogel as additional plaintiffs, and Grotewiel's, Vogel's, and the State Plaintiff's counsel (Bottini & Bottini and Glancy Prongay & Murray LLP ("GP&M"), respectively) as additional counsel – filed the Consolidated Class Action Complaint (the "Consolidated Complaint") in this Action, which alleged, on behalf of those who purchased Avinger common stock pursuant or traceable to the IPO, that the Offering Documents for the IPO contained material misstatements or omissions concerning Avinger and its Pantheris product, and that as a result all Defendants had violated §11 of the Securities Act.  Joint Decl., ¶¶20-21.

**C.      The Negotiation of the Settlement**

After a series of telephone conferences with the Court's ADR Program – and consistent with the Court's October 17, 2017 Order – the parties in both the Federal and State Actions agreed to pursue a private mediation with one of the country's most respected mediators of complex cases (Robert Meyer) and participate in a face-to-face mediation at the Mediator's offices on February 8, 2018.  *Id.* ¶23.  In advance of that mediation session, counsel for both sides participated in multiple joint and separate telephone conferences with the Mediator.  In addition, both sides prepared and exchanged comprehensive written opening mediation briefs and accompanying exhibits, which were exchanged among the parties on January 22, 2018.  *Id.* ¶24.

1    Moreover, in accordance with the Court's pre-trial scheduling order, on January 26, 2018,

2    Defendants filed two sets of motions seeking to dismiss the Action in its entirety.  In their motions,

3    Defendants further expanded upon the arguments that had already been raised in Avinger's

4    opening mediation submissions as to why Defendants believed that all claims against them should

5    be dismissed and cited additional legal authorities for their positions.  Shortly thereafter, on

6    February 2, 2018, Plaintiffs submitted their reply mediation papers, which responded to all of the

7    arguments that Defendants raised in their opening mediation brief and/or their motions to dismiss.

8    *Id.* ¶¶25-26.

9    The face-to-face mediation that took place at the Mediator's offices, on February 8, 2018,

10   lasted over seven hours.  During the mediation, the Mediator pressed both sides to realistically

11   address the strengths and weaknesses of the Class's claims and Defendants' defenses.  Despite

12   making some progress towards a possible settlement of both the State and Federal Actions, at the

13   end of this full day of mediation, and related negotiations, the parties were unable to reach an

14   agreement. Before the parties' counsel left the mediation, however, the Mediator made a

15   "mediator's proposal," whereby he proposed that all securities claims that were, or could have

16   been, asserted in the Actions be settled (subject to judicial approval) for $5 million in cash.

17   *Id.* ¶27.

18   Attempts to reach an agreement based on the Mediator's proposal proved difficult, with the

19   result that further negotiations continued over roughly the next six weeks.  As settlement

20   negotiations continued, Lead Counsel prepared the Amended Complaint, which was filed on

21   March 19, 2018.  The Amended Complaint re-asserted the Securities Act claims referenced above

22   while adding claims that Avinger and the Officer Defendants defrauded investors who purchased

23   Avinger common stock during the Class Period in violation of the 1934 Act by making materially

24   misleading statements about Avinger's business and Pantheris product.  *Id.* ¶¶28-29.

25   On March 23, 2018, the parties signed a memorandum of understanding to settle both the

26   Federal and State Actions on terms consistent with the Mediator's original proposal and so advised

27   the Court on March 23, 2018.  *See* ECF No. 111.  The parties thereafter negotiated the terms of the

28   customary "long form" Stipulation and accompanying forms of Preliminary Approval Order,

7

individual Notice, Summary Notice, Proof of Claim, and Final Judgment.  The parties executed the Stipulation (with exhibits) on May 9, 2018.  Joint Decl., ¶¶30, 32.

### III.   SUMMARY OF THE TERMS OF THE SETTLEMENT

A copy of the Stipulation, together with its exhibits, has previously been filed with the Court at ECF No. 115-3.  In sum, the main terms of the Settlement are as follows:

**Monetary Consideration:**   In consideration for the Class Members' release of claims described below, Avinger has caused $5 million to be paid into an escrow account established by Lead Counsel.  Stip., ¶2.  Full payment was received by the Escrow Agent on July 12, 2018.

**Distribution to Class Members:**   The resulting settlement fund, less costs of notice and administration, taxes on income earned by the fund, any Court-awarded attorneys' fees and expenses (including any awards to the representative Plaintiffs for their time and expenses incurred in connection with their service to the Class) (the "Net Settlement Fund"), will be distributed to Authorized Claimants (*i.e.*, Class Members who file timely and valid Proof of Claim forms) in accord with the Plan of Allocation (which is also subject to Court approval).  *Id.* ¶¶27-37.  The proposed Settlement is non-reversionary, as once the Settlement becomes final, no Defendant is entitled to get back any of the $5 million settlement consideration.  *Id.* ¶2.

**Release of Claims:**   In exchange for the $5 million, Plaintiffs and the Class Members will dismiss the Action against all Defendants, with prejudice, and release all of the "Released Claims" against the Defendants and their related parties (the "Released Defendants' Parties").  *Id.* ¶¶23-24. As is customary, "Released Plaintiffs Claims" is defined to include all claims (including "Unknown Claims") that were, or could have been, asserted in the Action or any other forum by Plaintiffs or the Class against any of the Released Defendants' Parties, ***provided*** that such claims both: "(a) arise out of, are based on, or relate in any way to any of the allegations, acts, transactions, facts, events, matters, occurrences, statements, representations or omissions" alleged in the Action; and "(b) arise out of, are based on, or relate to the purchase or acquisition of any shares of Avinger common stock during the Class Period."  *Id.* ¶¶1.31, 1.43.

1

## IV.   THE STANDARDS GOVERNING FINAL JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

2

It is well-established in this Circuit that "voluntary conciliation and settlement are the

3

preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n of City & Cty.*

4

*of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d

5

1036, 1041 (N.D. Cal. 2008) ("court[s] must also be mindful of the Ninth Circuit's policy favoring

6

settlement, particularly in class action law suits").   Class actions readily lend themselves to

7

compromise due to the difficulties of proof, the uncertainties of the outcome, and the typical length

8

of the litigation, and "the public has an overriding interest in securing the just, speedy, and

9

inexpensive determination of every action."   *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,

10

460 F.3d 1217, 1227 (9th Cir. 2006); Fed. R. Civ. P. 1.[2]   This is particularly true in class action

11

suits.   *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util.*

12

*Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[3]

13

In deciding whether to approve a proposed settlement of a securities class action under Fed.

14

R. Civ. P. 23(e), the court must find that the proposed settlement is fair, adequate, and reasonable.

15

*Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th

16

Cir. 1977).   The Ninth Circuit has identified seven factors (the "*Boeing* factors") to consider in

17

evaluating the fairness of a class action settlement, including: "(1) the strength of plaintiffs' case;

18

(2) the risk, expense, complexity, and [likely] duration of further litigation; (3) the risk of

19

maintaining class [action status throughout the trial]; (4) the amount of the settlement;

20

(5) investigation and discovery [completed]; (6) the experience and views of counsel; and (7) the

21

reaction of class members."   *In re Skilled Healthcare Grp., Inc. Sec. Litig.*, No. CV 09-5416 DOC

22

(RZx), 2011 WL 280991, at *2 (C.D. Cal. Jan. 26, 2011) (citing *Staton v. Boeing Co.*, 327 F.3d

23

---

[2]    Unless otherwise indicated, all emphasis is added and internal citations and quotations are omitted.

24

[3]    Courts have similarly noted that a judge's function in reviewing a settlement is not to rewrite the

25

parties' agreement or to try resolve the disputed issues being compromised, and instead, courts should take a liberal approach in reviewing class action settlements, recognizing that settlements involve the exercise of judgment and that the concept of "reasonableness" can encompass a broad range of results.  *See, e.g., Nat'l*

26

*Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

27

expensive litigation with uncertain results."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (because "[s]ettlement is the offspring of compromise[,] the question . . . is not whether the final

28

product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion").

9

938, 959 (9th Cir. 2003)).  "The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice*, 688 F.2d at 625.  As set forth below, each of these criteria supports final approval.

## V.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    The Settlement Enjoys an Initial Presumption of Reasonableness Because It Is the Product of Arm's-Length Settlement Negotiations Conducted Under the Auspices of an Experienced Mediator

As a threshold matter, case law also recognizes that there is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations.  *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *5 (N.D. Cal. June 30, 2007); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84RMB, 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) ("Where the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.").[4]

Here, both sides were represented by capable counsel, and all three Plaintiffs' Counsel firms have extensive experience in successfully bringing complex securities and other complex class actions.  *See, e.g.*, copies of the firm résumés of Scott+Scott, GP&M, and Bottini & Bottini (attached to the respective Declarations of William C. Fredericks, Ex Kano S. Sams II, and Francis A. Bottini, Jr.); *see also* ECF No. 83 at 7 (noting this Court's prior approval of Scott+Scott as Lead Counsel "based on the information submitted regarding the firm's experience and expertise in the area of securities litigation").  Moreover, although the case had not yet entered formal discovery when the proposed Settlement was reached, as reflected by their initial complaints and in their detailed Amended Complaint, Lead Counsel and the other Plaintiffs' Counsel firms had conducted

---

[4]    *See also Gerardo v. Quong Hop & Co.*, No. C 08-3953 JF (PVT), 2009 WL 1974483, at *3 (N.D. Cal. July 7, 2009) (fact that proponents of settlement are experienced in this type of litigation supports preliminarily approval); *Gribble v. Cool Transps. Inc.*, No. CV 06-04863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *Nat'l Rural*, 221 F.R.D. at 528); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (counsel's belief that proposed settlement represents most beneficial result for the class is compelling factor in approving settlement).

1 │ substantial pre-filing investigations, which included (*inter alia*) reviewing extensive documentary

2 │ materials (including Avinger's public regulatory filings, conference call transcripts, and analyst

3 │ reports about Avinger and the industry within which it operates), as well as locating and

4 │ interviewing multiple former Avinger employees.  Moreover, all parties had plainly become fully

5 │ familiar with the legal aspects of their respective positions through their briefing of relevant issues

6 │ earlier this year.  Plaintiffs and their counsel thus had a more than a sufficient understanding of the

7 │ strengths and weaknesses of the claims before agreeing to the Settlement.  *See Portal Software*,

8 │ 2007 WL 1991529, at *6 (approval warranted where experienced counsel, who understood each

9 │ side's claims and defenses, negotiated settlement).  Nor can there be any serious dispute that the

10 │ settlement negotiations were hard-fought and conducted at arms'-length.  Indeed, the Settlement

11 │ was reached only after an initial, day-long mediation session in which the parties had failed to

12 │ reach an agreement, requiring weeks of additional negotiations and discussions.  Joint Decl., ¶¶23-

13 │ 30.

14 │ Moreover, that the Settlement is consistent with the terms of a "mediator's proposal" made

15 │ by an independent and highly respected mediator (Robert Meyer), only strengthens the strong

16 │ presumption of fairness here.  *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66

17 │ (S.D.N.Y. 1993); *see also, e.g.*, *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142-ADB, 2016 WL

18 │ 8677312, at *6 (D. Mass. Sept. 30, 2016) ("the participation of an experienced mediator[] also

19 │ supports the Court's finding that the Settlement is fair, reasonable, and adequate"); *In re

20 │ Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016)

21 │ ("participation of an independent mediator in settlement negotiations virtually insures [*sic*] that the

22 │ negotiations were conducted at arm's length and without collusion between the parties").

23 │ **B.      Each of the *Boeing* Factors Also Supports Final Approval**

24 │ Moreover, for all of the additional reasons set forth below, each of the *Boeing* factors also

25 │ weighs in favor of final approval.

26 │ **1.      The Strength of Plaintiffs' Case and Risks of Further Litigation**

27 │ In determining whether the Settlement is fair, reasonable, and adequate, courts should

28 │ balance, against the continuing risks of litigation, the benefits afforded to the Cass, and the

1   immediacy and certainty of a substantial recovery.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

2   454, 458 (9th Cir. 2000).  Accordingly:

> The Court shall consider the vagaries of litigation and compare the significance
> of immediate recovery by way of the compromise to the mere possibility of
> relief in the future, after protracted and expensive litigation. In this respect, [i]t
> has been held proper to take the bird in hand instead of a prospective flock in
> the bush.

6   *Nat'l Rural*, 221 F.R.D. at 526.

7          This case was plainly complex, involving disputed issues as to the design, testing, and

8   reliability of an atherectomy product, Pantheris, that incorporated what the Company claimed was

9   novel technology and product features.   Plaintiffs believed that their claims had merit, but

10  recognized that success at trial would necessarily involve an inherently unpredictable "battle of

11  experts," with Defendants arguing that Pantheris met all U.S. Food and Drug Administration

12  requirements for approval, and that any design or reliability "issues" were no greater than what any

13  reasonable investor would expect in the first commercial version of a "cutting edge" medical

14  device product.

### a.      Risks of Proving Liability

16         Although Plaintiffs' claims under the Securities Act did not require proof of fraudulent

17  intent, Defendants raised a number of arguments as to why such claims should not even get past

18  their pending motions to dismiss as a matter of law.  For example, although Plaintiffs alleged that

19  Pantheris "version 1.0" suffered from various undisclosed problems as of the January 2015 IPO,

20  Defendants argued that this did not impose on them a "duty to predict" that a different, "version

21  2.0" of Pantheris (which was the first version actually marketed for commercial sale) would

22  experience disappointing sales after it was launched in March 2016 (which was more than a year

23  *after* the IPO).  In addition, Defendants argued that they had no reason to "predict" that users of

24  the commercial version of Pantheris would experience significant reliability problems, given that

25  practitioners who had been using the (original) version 1.0 device in clinical trials during the

26  period leading up to the IPO had not experienced any such problems.  Joint Decl., ¶¶38-39.

27         Defendants also argued, relatedly, that they would have had valid defenses under the

28  PSLRA's "safe harbor" for forward-looking statements, the "bespeaks caution" doctrine, and the

"opinion doctrine."  Again, Plaintiffs' Counsel believe that they had responses to such arguments (*e.g.*, that limited usage in clinical trials is not an adequate substitute for testing based on more rigorous "real world" conditions of heavier usage, and that any problems were sufficiently concrete to render the bespeaks caution, forward-looking statement, and opinion doctrines all inapplicable).  Nonetheless, it would have been challenging to persuade a jury that, *e.g.*, alleged "robustness" problems that had not yet appeared in actual use of Pantheris "version 1.0" in clinical trials prior to the IPO provided a basis for finding that the Offering Materials should have disclosed that "version 2.0" of Pantheris – which was not commercially launched until more than a year after the IPO – would experience such problems.  *Id.* ¶40.

Moreover, determining whether there were material problems with Pantheris version 1.0 or Avinger's product testing protocols at the time of the IPO, and, if so, what Defendants reasonably knew would be the likely implications for future sales of the commercial Pantheris version that was still in development, would have likely turned on highly technical expert analysis of an allegedly novel and cutting edge technology.  Such "battles of the experts" are typically quite costly, and their outcomes are inherently difficult to predict.  *Id.* ¶41.

In addition, the dearth of statements in the Offering Materials that affirmatively misrepresented any features of the Pantheris product raised additional challenges, as it meant that the case would turn on proving material omissions, rather than having affirmative statements that might more readily be shown to be false.  Defendants, for example, argued that: (a) all of the Offering Materials' statements regarding the Pantheris product, its successful track record in clinical trials, and the fact that Avinger did not expect to introduce a commercial version of the product until 2016, were all true, correct, and complete; and that (b) Plaintiffs would therefore have had to predicate their liability claims on Item 303 of Regulation S-K (which requires affirmative disclosure of "***known*** trends or uncertainties" that the issuer "reasonably expects" will have a material adverse impact on sales, revenue, or income).  Although not nearly as stringent as requiring proof of intent to defraud (*scienter*) under the 1934 Act, issues relating to Avinger's knowledge and reasonable expectations raised additional litigation risk.  *Id.* ¶42.

13

Proving Plaintiffs' claims under the 1934 Act (which were asserted only against Avinger and the Officer Defendants) would have raised only still further challenges, as prevailing on such claims requires proof of the additional element of a defendant's *scienter* (*i.e.*, fraudulent intent). Again, Plaintiffs' Counsel believed that they had a reasonable basis for alleging the Officer Defendants' knowledge of internal disputes within Avinger as to the adequacy of its testing protocols and the existence of design problems, but there could be no assurance that a court or jury would find that knowledge of internal differences of opinion equated to knowledge of actual problems of sufficient magnitude to require public disclosure – nor could there even have been any assurance that the Court would have found that the Amended Complaint's allegations raised the kind of strong inference of *scienter* required to survive a motion to dismiss the 1934 Act claims. Nor was this a case that involved insider selling of Avinger shares at levels that would have likely supported a finding of scienter independent of sufficient factual allegations of a defendant's conscious or reckless misconduct.[5] *Id.* ¶43.

### b.    Risks Relating to Loss Causation and Proof of Damages

In addition, had this case gone to trial, issues of loss causation and damages would also have been complex and hotly disputed.  For example, even assuming *arguendo* that Plaintiffs established liability on some of their claims, Defendants argued that their liability could not extend to any damages allegedly suffered after July 13, 2016 – the day after Avinger first announced (based on its first full quarter of commercial Pantheris sales) that its commercial customers had experienced certain "robustness" issues with the Pantheris product and that the Company needed to take steps to try to improve it.  Again, Plaintiffs would have argued that Avinger's July 12, 2016 disclosures were only partial, but Defendants would have argued that after that date the market was "on notice" of any alleged problems that were the basis for Plaintiffs' complaint.  Moreover, even as to the price decline Avinger shares experienced immediately after the July 12, 2016 disclosures, Defendants had arguments that only a fraction of those losses were due to disclosures of the

---

[5]     In addition, Avinger disclosed in July 2016 that second quarter 2016 sales of the commercial version of Pantheris were disappointing and that the product was experiencing quality issues that needed to be fixed.  Because the second quarter of 2016 was the first full quarter of Pantheris sales following its commercial launch in March 2016, Avinger and the Officer Defendants would also argue that their "prompt" disclosure of quality issues in July 2016 refutes any contrary inferences of scienter.

1   problems that Plaintiffs claimed had been concealed – and that the bulk of that decline (and of the

2   later, lesser declines alleged in the Amended Complaint) were due to disclosures of unrelated

3   matters. *Id.* ¶¶44-45.

4          Thus, even if Plaintiffs prevailed on liability, there was no assurance that Lead Plaintiffs

5   could have recovered damages as large as (let alone larger than) the $5 million obtained under the

6   proposed Settlement.   Moreover, at the time the Court directed the parties to pursue ADR,

7   Avinger's financial condition had deteriorated to a point where there were serious questions as to

8   its ability to pay a judgment that might be rendered against it had this case been litigated to trial.

9   Indeed, as of the date the Stipulation was signed, Avinger's total market capitalization was only

10  about $6 million, and its financial condition remains uncertain today. *Id.* ¶46.

11         In sum, consideration of the strengths and weaknesses of the case and the general and

12  specific risk factors summarized above all strongly support final approval.

13              **2.        The Expense, Complexity, and Duration of Further Litigation**

14         Courts consistently identify the complexity, expense, and likely duration of litigation as

15  key factors in evaluating a settlement's reasonableness, especially in the securities class action

16  context.  *See, e.g.*, *In re AOL Time Warner, Inc.*, No. 02 Civ. 5575(SWK), 2006 WL 903236, at *8

17  (S.D.N.Y. Apr. 6, 2006) (due to their "notorious complexity," securities class actions often settle to

18  avoid "the difficulty and uncertainty inherent in long, costly trials").   As noted in the preceding

19  section, this case was plainly complex as both a factual and legal matter.   For example, as a factual

20  matter, the case involved disputed issues relating to a cutting edge medical device.   And the

21  complexity of just some the legal issues have already been discussed immediately above.

22         As for the likely duration of further litigation, continued litigation through decision on the

23  pending motions to dismiss, fact discovery, expert discovery, class certification, summary

24  judgment, trial, and post-judgment motions and appeals (followed by efforts to enforce the

25  judgment) would likely take many years before a final judgment could be obtained and collected

26  for the benefit of the Class.  *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745

27  (S.D.N.Y. 1985).   By contrast, the proposed Settlement will result in an immediate benefit for

28  eligible claimants.   In short, the proposed Settlement ensures a significant recovery now, while

15

1    eliminating the risk of a lesser recovery (or no recovery at all) after years of further complex and

2    expensive litigation against the settling, China-based Defendants.  This factor thus also strongly

3    supports approval.

4                    **3.       The Risks of Maintaining Class Certification Through Trial**

5            Although Plaintiffs do not believe there would have been issues of certifying *a* class, there

6    were nonetheless risks as to whether a class as broad as the one certified here could be maintained

7    through trial.  For example, as noted above, there were issues as to whether those who purchased

8    shares after Defendants' July 12, 2016 disclosures could have remained in the Class, based on loss

9    causation issues.  Similarly, given disputes as to traceability, the ability of Class Members to bring

10   Securities Act claims on a Class-wide basis with respect to Avinger shares purchased after

11   September 5, 2014, November 24, 2015, and/or May 5, 2016 was also at risk.  *See, e.g.*, *In re:*

12   *Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (risk that defendants

13   might attempt to shorten the class period supported settlement).  This factor therefore also supports

14   final approval.

15                   **4.       The Amount of the Settlement**

16           It is respectfully submitted that the $5 million all cash Settlement plainly represents a

17   meaningful and significant recovery for the Class.  For example, notwithstanding Avinger's weak

18   financial condition, the $5 million recovery here is equal to the median recovery figure ($5

19   million) for all securities in 2017 based on published data by Cornerstone Research.[6]  Moreover,

20   based on Plaintiffs' Counsel's analysis and consultation with its damages expert, the $5 million

21   Settlement represents a substantial recovery in a case where the Class's estimated reasonably

22   recoverable damages under the Securities Act is approximately $31 million, and where any

23   additional reasonably recoverable damages under the 1934 Act (leaving aside Avinger's ability to

24   pay) were roughly an additional $34 million.  Joint Decl., ¶35.

25

26   ---

     [6]       *See* L. Bulan, E. Ryan & L. Simmons, *Securities Class Action Settlements: 2017 Review and*

27   *AnalysisI* at 3, CORNERSTONE RESEARCH (2018), available at www.cornerstone.com.  Another leading
     independent firm has calculated that the median recovery for all securities class actions in 2017 was slightly

28   higher, at $6 million.  *See* S. Starykh & S. Boettrich, *Recent Trends in Securities Class Action Litigation:*
     *2017 Full Year Review* at 30, NERA ECONOMICS (Jan. 29, 2018), available at www.nera.com.

Moreover, the estimated average gross recovery per damaged share of $0.15 is particularly significant here when one considers that, on an apples-to-apples basis (which takes into account Avinger's recent pre-reverse 1-for-40 stock split in January 2018), Avinger shares are currently trading at only about $0.04 per pre-split share – and at the time the Stipulation was executed, the $5 million Settlement Amount almost equaled Avinger's then-current total market capitalization of roughly $6 million.  *Id.* ¶36.

Accordingly, and especially given the significant and specific litigation risks summarized above, this factor also supports final approval.

### 5. Investigation or Discovery Conducted and Views of Experienced Counsel

Both of these factors have already been discussed above at §V.A.  In sum, this case was settled only after Plaintiffs' Counsel had conducted an extensive investigation, briefed the relevant legal issues, marshaled their arguments for the independent Mediator in an arms-length ADR process (as contemplated by the Court's October 2017 Order), and engaged in weeks of further hard-fought negotiations related to the terms and documentation of the Settlement.  And, all three Plaintiffs' Counsel firms, who each have substantial experience in complex class actions, support the proposed Settlement.  Accordingly, these factors also support approval.

### 6. Reaction of the Class

As noted above, pursuant to the Court's Preliminary Approval Order, copies of the Notice and Proof of Claim were mailed to potential Class Members, who could be identified with reasonable effort, and the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire* on July 9, 2018.  Cavallo Decl., ¶¶3-8.  Copies of the Stipulation, Notice Package, and Preliminary Approval Order were also placed on the settlement website (www.Avingersecuritieslitigation.com) identified in the Notice.  *Id.* ¶10.  The Notice advised the Class of the terms of the Settlement, Plan of Allocation, and counsel's request for an award of attorneys' fees and expenses, as well as the procedure and deadline for filing objections and opting out of the Class.  To date, 15,980 Notice Packages have been mailed to potential Class Members and nominees.  *Id.* ¶7.  While the objection and "opt-out" deadline – October 2, 2018 – has not yet

17

1  passed, to date, not a single Class Member has filed an objection to the Settlement, Plan of

2  Allocation, or counsel's request for an award of attorneys' fees and expenses.  Joint Decl., ¶¶70-

3  72.  Nor have any requests to opt-out been received.  *Id.* ¶73; Cavallo Decl., ¶11.

4          While not conclusive, "that the overwhelming majority of the class willingly approved the

5  offer and stayed in the class presents at least some objective positive commentary as to its

6  fairness."  *Hanlon*, 150 F.3d at 1027.  And, even if some objections are ultimately received, it is

7  well established that the fact that some class members object to a settlement does not prevent a

8  court from approving a settlement, as normally "[a] certain number of ... objections are to be

9  expected in a class action."  *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533

10  (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636

11  F.3d 235 (6th Cir. 2011).

12                      **7.      Summary**

13          In sum, a review of all of the above factors fully supports a finding that the Settlement is

14  fair, reasonable and adequate, and should be granted final approval.

15  **VI.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

16          Plaintiffs also seek approval of the Plan of Allocation.  The Plan of Allocation is set forth

17  in full in the Notice mailed to potential Class Members.  *See* Notice, attached as Exhibit A to the

18  Cavallo Decl. at 9-12 (section entitled "Proposed Plan of Allocation of Net Settlement Fund

19  Among Class Members").  Assessment of a plan of allocation for settlement proceeds in a class

20  action under Rule 23 is also governed by a "fair and reasonable" standard of review.  *See Class*

21  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289 (9th Cir. 1992); *In re Ikon Office Sols., Inc. Sec.*

22  *Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000).  In applying this standard, district courts enjoy "broad

23  supervisory powers . . . to allocate the proceeds among the claiming class members . . . equitably."

24  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am.*

25  *Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).   And, if recommended by "experienced and

26  competent" class counsel, a plan of allocation will typically be approved as long as it has a

27  reasonable and rational basis.  *See, e.g.*, *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993);

28  *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

1   Here, the Plan of Allocation was developed in close consultation with Plaintiffs' damages

2   expert and is based on allocation methodologies frequently applied in securities cases of this type.

3   In particular, it is based on the decline in value of Avinger common shares that occurred following

4   partial disclosure events as the truth concerning the limitations and problems with Avinger's

5   technology was gradually disclosed, while also taking into account the fact that those who

6   purchased earlier in the Class Period faced materially fewer "traceability" and causation issues.  In

7   addition, the Plan of Allocation appropriately provides for discounting (relative to the value of

8   claims under the Securities Act) the value of claims that were recoverable (if at all) only under the

9   1934 Act to reflect the significantly greater difficulties involved in obtaining a recovery based on

10  the 1934 Act claims compared to Securities Act claims.   Accordingly, the proposed Plan of

11  Allocation will result in a fair and equitable distribution of the Net Settlement Fund and should be

12  approved.  *See* Joint Decl., ¶¶49-51.

13  **VII.   CONCLUSION**

14  For all the reasons set forth above, in the Joint Declaration, and the entire record, the

15  Settlement and Plan of Allocation should be given final approval, and the Court should enter the

16  [Proposed] Final Judgment and [Proposed] Order Approving Plan of Allocation in the forms

17  attached hereto as Exhibits 1-2.

18  Dated:  September 11, 2018                **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

19    /s/ John T. Jasnoch
                                 John T. Jasnoch (CA 281605)

20                                   600 W. Broadway, Suite 3300
                                 San Diego, CA 92101

21                                   Telephone: (619) 233-4565
                                 Facsimile: (619) 233-0508

22                                   jjasnoch@scott-scott.com

23                                   William C. Fredericks (admitted *pro hac vice*)
                                 Sean T. Masson

24                                   **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                 The Helmsley Building

25                                   230 Park Avenue, 17th Floor
                                 New York, NY 10169-1820

26                                   Telephone: (212) 223-6444
                                 Facsimile: (212) 223-6334

27

28

1 wfredericks@scott-scott.com
 smasson@scott-scott.com

2

*Lead Counsel for Plaintiffs and the Class and*

3 *Counsel for Lead Plaintiffs and Class Representatives*
 *Banerjee and Harjai*

4

Robert V. Prongay

5 Ex Kano S. Sams II
 **GLANCY PRONGAY & MURRAY LLP**

6 1925 Century Park East, Suite 2100
 Los Angeles, CA 90067

7 Telephone:  (310) 201-9150
 Facsimile:  (310) 201-9160

8 rprongay@glancylaw.com
 esams@glancylaw.com

9

*Counsel for the State Plaintiff and Additional*

10 *Counsel for the Class*

11 Francis A. Bottini, Jr. (SBN 175783)
 Albert Y. Chang (SBN 296065)

12 Yury A. Kolesnikov (SBN 271173)
 **BOTTINI & BOTTINI, INC.**

13 7817 Ivanhoe Avenue, Suite 102
 La Jolla, CA 92037

14 Telephone:  (858) 914-2001
 Facsimile:   (858) 914-2002

15 fbottini@glancylaw.com

16 *Counsel for Additional Class Representatives*
 *Grotewiel and Vogel and Additional Counsel*

17 *for the Class*

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION
Case No. 4:17-cv-03400-CW

1

## CERTIFICATE OF SERVICE

2         I hereby certify under penalty of perjury under the laws of the United States of America

3   that, on September 11, 2018, I authorized the electronic filing of the foregoing with the Clerk of

4   the Court using the CM/ECF system, which will send notification of such filing to the email

5   addresses for all counsel of record (which includes counsel for all parties) in this action.

6                                                                   /s/ John T. Jasnoch

7                                                                  John T. Jasnoch (CA 281605)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION
Case No. 4:17-cv-03400-CW